UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BILLY BRANTLEY, et. al. | : | Case No. C-I-01-378 |
| | : | |
| Plaintiffs, | : | Judge Susan J. Dlott |
| | : | |
| vs. | : | |
| | : | DEFENDANT, CINERGY CORP.'S |
| CINERGY CORP. | : | MOTION FOR SUMMARY JUDGMENT |
| | : | AS TO RODNEY V. JONES |
| Defendant. | : | |

Comes now Defendant, Cinergy Corp., pursuant to Rule 56 of the Federal Rules of Civil

Procedure, and respectfully moves the Court for an order granting summary judgment in its favor

as to plaintiff, Rodney Jones, there being no genuine dispute as to any material fact, and this

defendant being entitled to judgment as a matter of law.  This Motion is supported by pleading;

the deposition of Rodney Jones filed separately herein; the Affidavits of Al Perkins, Affidavit of

Ken Toebbe, Affidavit of Jay Alvaro, Esq. RE EEOC Charges and Affidavit of Rick Beach filed

in conjunction with Defendant, Cinergy Corp.'s, Motion to Sever Plaintiffs Claims; the

Supplemental Affidavit of Bernadette Reinhard, Affidavit of  Jim O'Connor and the

Supplemental Affidavit of Jay Alvaro, Esq. RE EEOC Charges filed separately herein; Federal

and Ohio law and the within memorandum.

Respectfully submitted,


/s/ Jill T. O'Shea
Jill T. O'Shea        (0034692)
Attorney for Defendant, Cinergy Corp.
139 E. Fourth Street, 25 Atrium II
P.O. Box 960
Cincinnati, OH 45201-0960
Phone:  (513) 287-2062
Fax:  (513) 287-3810


/s/ Gregory V. Mersol
Gregory V. Mersol (0030838)
John B. Lewis (0013156)
BAKER & HOSTETLER LLP
3200 National City Center
1900 East Ninth St.
Cleveland, OH  44114-3485
Telephone: (216) 621-0200
Facsimile: (216) 696-0740


*Attorneys for Defendant*
*Cinergy Corp.*

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BILLY BRANTLEY, et al.  : Case No. C-1-01-378
          :
   Plaintiffs,  : Judge Susan J. Dlott
          :
 vs.      :
          : MEMORANDUM OF LAW IN SUPPORT
          : OF DEFENDANT, CINERGY CORP.'S,
CINERGY CORP.   : MOTION FOR SUMMARY JUDGMENT
          : AS TO PLAINTIFF, RODNEY V. JONES
   Defendant.  :

## I. INTRODUCTION

 Plaintiff, Rodney V. Jones ("Jones"), a Manual Technician employed by The Cincinnati Gas & Electric Company ("CG&E"), a subsidiary of Cinergy Corp. ("Cinergy"), has brought this action alleging race discrimination based upon his failure to receive the position of Lineperson "C". For the reasons explained more fully below, summary judgment should be granted in Cinergy's favor for the reason that Jones was not subject to any racial discrimination whatsoever including any materially adverse job actions based on race, let alone constructive discharge as a matter of law.

## II. STATEMENT OF FACTS

### A. Jones' Employment.

 CG&E hired Jones in 1989 as an Assistant Building Cleaner in the Real Estate/Facilities department. (Jones, pp. 12-13). Jones has never been employed by Cinergy Corp. which is a public utility holding company. Cinergy does not directly employ any personnel. (Beach Affid., ¶ 9; O'Connor Affid., ¶ ¶ 8, 9).

Jones was then employed in the Materials Management department of CG&E and CG&E **timely** promoted him to a  Materials Specialist "C" on April 18, 1990; Materials Specialist "B" on October 22, 1990; and  Materials Specialist "A" on October 28, 1991.  Jones acknowledged that his transfer to the Materials Management department was not delayed; CG&E  timely promoted him to the various Materials Specialist positions; and that CG&E's Materials Specialist driver or equipment tests and written exams were required of all employees and were not unfair to African-Americans. (Jones,  pp. 13, 18-19, 23-24, 26-31, 33-34; Exhibits 10-14). Jones experienced no discrimination or harassment in applying for, being selected into, and holding the Materialist Specialist positions. (Jones, pp. 21-22, 30-32). [1]

Jones stated that he had no experience with upper management while a Materials Specialist C, B or A that he felt was unfair or discriminatory. (Jones,  p. 44).  Jones likewise did not witness any discriminatory or racially harassing conduct directed at others. (Jones,  p. 32). From the inception of his employment through that period of time, Jones never filed a single grievance with his union. (Jones, p. 42). The Materials Management department downsized and Jones was reclassified to a Manual Technician on September 1, 1997 in T&D Projects department at the Queensgate office, based on seniority, not race. (Jones, pp. 42-43, 45).

**B.     Alleged Failure to Promote**

Jones' allegations relate to applications for the Lineman "C" position of the Lineperson Apprentice Program, Job Postings 97-223, 98-196, 98-404, 99-115, 99-250, 99-494 and 00-83. (Reinhard Affid., ¶ 7).[2] The jobs were posted on the job posting boards throughout the Company

---

[1]     Jones applied for a position as a material specialist heavy truck driver in 1994 or 1995 but never completed the application process because he did not have sufficient seniority.  He does not  make any race-related claim relative to either his application or the selection procedure. (Jones, pp. 48-49)

[2]     See Affidavit of Bernadette Reinhard and Supplemental Affidavit of Bernadette Reinhard as to the number of applicants and results of the Job Postings 97-223, 98-196, 98-404, 99-115, 99-250, 99-494 and 00-83.

and on the Internet and were available to all employees and the manner in which they were posted was not unfair or discriminatory. (Jones, p. 100).

Jones participated in the EEOC validated Targeted Selection Interview Process for the Lineperson Apprentice Program.  (Reinhard Affid., ¶ 4). He received the Candidate Preparation Package and Targeted Selection Booklet materials in 1998 or 1999 and in subsequent years. Jones stated the Targeted Selection Materials were not unfair or discriminatory based on race. Jones reviewed the entire book solely on one occasion for about an hour. He never wrote down written answers, only made mental notes notwithstanding instructions to write down answers. (Jones, pp. 112-113).

Jones passed the Field Assessment Test the first time that he took it in August 1997 and he never observed anything unfair during the Field Assessment Test. (Jones, pp. 109-110). Jones had no knowledge as to who applied, how many individuals were selected for interviews, who was actually hired at that time, how they were selected, how they scored on assessments and tests, or for that matter, how he scored on assessments and tests. (Jones, pp. 100-101, 110-111). Jones was interviewed by a panel of three on that occasion and never followed up with anyone about how he did or why he was not selected in 1997. (Jones, p. 116). [3] In 1998, Jones had no complaints about that process or those involved. (Jones, p. 28). As in 1997, Jones had no idea who applied, was interviewed, tested or hired in 1998. (Jones, p. 128).

Jones applied for lineperson postings in 1999 and 2000 and was interviewed and assessed. (Jones, pp. 130-131).  He received booklets concerning the line work simulation field test and the targeted selection interview material pre-highlighted by the Company in those years. (Jones, p. 135-136, 142; Exhibit 26).   Jones did not observe anything unfair or discriminatory in

---

[3]     After subsequent applications and interviews, he did call human resources and learned that he had trouble in the interview process. (Jones, p. 117).  Jones "did not take advantage" of his opportunity to talk to the department hiring manager, Ken Toebbe, about how he was doing on field assessments or interviews notwithstanding that he had other conversations about openings with him. Jones does not accuse Toebbe of discrimination. (Jones, pp. 140-141).

the actual testing and interviewing and has not experienced any discriminatory treatment at any time by the individuals involved in testing or interviewing him.[4] (Jones, pp. 122-123, 125-126,143-144, 148-149, 152-153).

At the time of the latest posting for which he applied, Job Posting 00-83 in April 2000, 268 applicants applied for the position.  Jones was the fifth candidate behind the successful candidates in a candidate pool of 59 who were interviewed.   Jones had no knowledge how close he was in terms of being a successful candidate, nor did he inquire related to same.  (Jones, pp. 144-145; Exhibit 25; Reinhard Affid., ¶¶ 8-9; Suppt. Reinhard Affid., ¶¶31-33).

## C.    Alleged Hostile Work Environment

Jones testified that he received no unfair discipline; was not denied merit raises; was not subject to unfair or discriminatory conduct; received no negative items in personnel file; received no negative evaluations; and was not held to a different standard than Caucasian employees. (Jones, pp. 22-24, 31-36, 40-41, 59-64, 91-95, 234).

Jones could not identify any discriminatory conduct or harassment on the part of supervisors or co-workers while employed as an Assistant Building Cleaner or in the various Materials Specialist positions from 1991 throughout 1997. (Jones, pp., 24, 38-40).

Jones worked as a Manual Technician from 1997 to 2001 at the TodHunter and Port Union Power Generating Stations. (Jones, p. 50).[5]  No offensive comments based on race were ever made to or in front of Jones, nor did he ever observe any racially offensive items in the workplace during any of his positions with the company. (Jones, pp. 24, 31-32, 34-36, 39-41, 52-

---

[4] Jones questioned the hiring of candidates "off the street"  but acknowledged that he did not know their experience (other than that they did not work for CG&E) and has no complaints about their actual work ability. (Jones, pp. 89-90, 164).  Jones, also conceded that other internal Caucasian candidates were also by-passed for the Lineperson position when individuals were hired in off the street. (Jones, p. 98).

[5] In 1999, Jones suffered a work-related injury and was off work. Again, he was treated fairly in the handling of his worker's compensation claim. (Jones, pp. 42)

53, 59-61). His supervisors, as a Manual Technician, Ron Lewis, Ron Stewart, and Bob Atkins, ever made racially offensive comments, jokes or statements or by supervisors at any other time. (Jones, pp. 34-36, 52). No racially offensive conduct was directed at him or others by co-workers other than one co-worker made a joke about "cotton in the field over there." (Jones, pp. 34-36, 51-53). That comment was not made in front of a supervisor and Jones could not identify who said it. Jones did not report it notwithstanding that he was aware of anti-harassment policies and reporting procedures. (Jones pp. 53-54; pp. 57-58). No co-workers or supervisors made racially intimidating threats or comments to him. He was not subject to unfair discipline or unfair treatment and never filed a grievance when he was a Manual Technician. He was granted all pay raises and afforded training and opportunities. (Jones, pp. 59- 60; 62-63).

### D.    Policies and Failure to Take Advantage of Corrective Opportunities

CG&E has strong policies and programs in place to uphold the Company's commitment to equal employment opportunity and a harassment free workplace including an Equal Employment Opportunity Policy, Harassment Free Workplace Policy and Affirmative Action Statement. All employees were provided with a copy of the Company's Workplace Harassment Policy on or about February 6, 2000 which also prohibits inappropriate conduct based on race and provides employees with several options to address any concerns they may have. (See, e.g., Brantley Exhibit 9). There was mandatory training for all employees on the policy and Jones attended a one (1) hour training session on or about May 24, 2000. (O'Connor Affid., ¶33).

Jones knew there were policies and procedures in place to report harassment, including race, to individuals other than supervisors and that employees could go to HR or the 800 number. Jones never went to HR or called the 800-hotline number. He also did not know of anyone who had a bad experience reporting to HR or the 800-hotline number. (Jones, p. 57-58).

### E.    Alleged Constructive Discharge

Although not affirmatively pled in his complaint, Jones tendered his voluntarily resignation with the assistance of his lawyer by correspondence dated July 31, 2001. (Jones, p. 168). Prior to quitting, Jones neither complained to his union or to anyone in the company, nor did he discuss his decision in advance with anyone in supervision or H.R. (Jones, pp. 169-171). Jones' decision was not based on a demotion, a poor performance rating, discipline, unfair treatment, or any change in job duties. (Jones, pp. 170-171).

Jones did not apply for the Lineperson "C" position after April of 2000 or in the year 2001, the year in which he voluntarily resigned. (Jones, pp. 144-145; Exhibit 25; Reinhard Affid., ¶¶ 8-9). Jones was never told that the Manual Technician position was going to be eliminated; was not demoted; denied a merit increase; reassigned to an undesirable job position; assigned changed work duties or benefits, etc. at any time in 2001 before he voluntarily resigned in July. Moreover, his pay as a Manual Technician was higher than a starting Lineman C at the time he quit. (Jones, pp. 94, 116, 170-171; Exhibit 33; Reinhard Affid., ¶ 11).

### III.    PROCEDURAL POSTURE

In April 2000, Jones filed a charge with the EEOC, with assistance of counsel, claiming that he had been blocked in receiving promotions, held to different standards because of his race and had received negative items in his personnel jacket.[6] In August 2000, Jones amended his charge, again with assistance of counsel, naming only Cinergy Corp alleging the same allegations and identifying the various dates in which he had applied for the Lineperson "C" position. Jones withdrew his charge on December 19, 2000. (Supp. Alvaro Affid., ¶ 10-14: Exhs. "I" and "J").

---

[6]    As demonstrated above, Jones' sweeping allegations are virtually identical to the generalized and conclusory allegations made by the other named plaintiffs in their EEOC charges prepared by counsel at that time, William Whalen, Esq.,. As demonstrated above, Jones' sworn deposition testimony in no manner supports his allegations.

IV.    **ARGUMENT OF LAW**

A.    **Cinergy Corp. is not an "employer" under Title VII**

Title VII of the United States Code, under which Tolbert has sued, applies only to "employers" as defined at 42 U.S.C. § 2000e (b).  An "employer" is a person "engaged in an industry affecting commerce who has fifteen or more employees . . ." As an initial matter, Cinergy should be dismissed from this proceeding. Cinergy has no employees and therefore is not an "employer". Cinergy's relationship as a parent company to CG&E, which employed Tolbert, does not create liability under the statute. Absent special circumstances, a parent corporation is not liable for the alleged statutory violations of its wholly owned subsidiary. Branham. v. Home Depot et. al., 2002 U.S. Dist. Lexis 18903 (E.D. Mich., 2003) (attached hereto); Watson v. Gulf & W. Indus., 650 F.2d 990, 993 (9th Cir. 1991).  Exceptional circumstances exist only where "the parent corporation exercises a degree of control that exceeds that normally exercised by a parent corporation."  Id. * 12, citing, Armburster v. Quinn, 711 F.2d 1332 (6th Cir. 1983).

Cinergy Corp. is a public utility holding company as defined under the Public Utility Holding Company Act of 1935 and the parent company of CG&E. Cinergy Corp. has no employees and thus neither shares management nor control over labor relations with its subsidiaries. Moreover, each subsidiary is operated separately from Cinergy Corp.  which has no operational functions such as providing retail electric and natural gas services. Jones has never been employed by Cinergy Corp. and has at all times been employed by CG&E. (Beach Affid., ¶¶ 4, 9 and 11; O'Connor Affid., ¶ 9)  CG&E was not named in the EEO charge and the Complaint.[7]  Thus, Jones' claims against Cinergy Corp. are barred as a matter of law.

---

[7] At this point, plaintiff cannot bring a claim against CG&E under Title VII because he has failed to first file a charge with the EEOC.  Ordinarily, a party not named in an EEOC charge may not be sued under Title VII. Perkins v. Silverstein, 939 F.2d 463, 471 (7th Cir. 1991); Schnellbaecher v. Baskin Clothing Co., 887 F.2d 124, 126 (7th Cir. 1989). Plaintiff can not escape this rule unless he can show  that (1)  CG&E's role as his employer, could

**B**.    **Plaintiff's Race Discrimination Claims Under Title VII and Ohio Law Are Not Actionable As A Matter of Law.**

**1.    Plaintiff's Claims Are Barred As Untimely**

Title VII requires an employee to file a charge with the EEOC within 300 days of any alleged unlawful employment practice before filing a lawsuit. See 42 U.S.C. § Section 2000e-5(e)(1); Love v. Pullman Co., 404 U.S. 522, 92 S. Ct. 616 (1972); <u>Rivers v. Barberton Board of Education</u>, 143 F.3d 1029, 1032 (6th Cir. 1998); <u>Donahoo v. Ohio Department of Youth Services</u>, 237 F. Supp. 2d 844 (N.D. Ohio 2002).  A Title VII plaintiff is also confined to those matters which were made in the charge of discrimination or those charges which are reasonably expected to grow out of the charge of discrimination. <u>Duggins v. Steak and Shake, Inc.</u>, 195 F.3d 828-832 (6th Cir. 1999); <u>Donahoo v. Ohio Department of Youth Services</u>,  supra.

 Jones had 300 days from an alleged adverse employment action to file an EEO charge. Because his first charge was filed on April 11, 2000, Jones would normally be precluded from bringing any action based on any alleged failure to promote prior to approximately June 1999 which are clearly discrete events which does not fall into the ambit of a continuing violation.

**2.    Plaintiff Offers No Direct Evidence Of Race Discrimination In Any Employment Action.**

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or nation origin.   42 U.S. C. 2000e-(2(a)(1).   To prevail in an employment discrimination claim under Title VII, a plaintiff may either provide direct evidence

---

not have been ascertained at the time of filing the EEO charge; (2) the interests of Cinergy Corp. are so similar to CG&E's interests for purposes of voluntary conciliation and compliance, that it would have been unnecessary to include CG&E in the EEOC proceedings; (3) that the absence of CG&E does not result in actual prejudice to CG&E in the EEO proceedings; and (4) that CG&E, in some way represented to him that its relationship with plaintiff was through Cinergy Corp.  <u>Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130</u>, 657 F.2d 890, 907-08 (7th Cir. 1981). Cinergy, in its Answer, denied that Cinergy Corp. was the employer and raised the affirmative defenses of failure to join an indispensable party, Cinergy Corp. is not the real party in interest and Cinergy Corp., as the parent Company, was not liable for the alleged tortuous acts of CG&E.

of discrimination or establish a prima facie case as set forth under the burden-shifting method in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Policastro v. Northwest Airlines, Inc. 297 F.3d 535, 538 (6th Cir. 2002). Jones' testimony fails to provide any direct evidence of discrimination. (See Statement of Facts, pp. 1-7).

### 3. Plaintiff Cannot Demonstrate A Prima Facie Case Of Race Discrimination As A Matter Of Law.

To make a prima facie claim of race discrimination under Title VII, a plaintiff must establish that: (1) he is a member of a protected group, (2) he was qualified for continuing employment in his position, (3) he suffered an adverse employment action, and (4) he was treated less favorably than a "similarly-situated" person outside of the protected group. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255-56, 101 S. Ct. 1089 (1981).[8] : Clayton v. Meijer, Inc. 281 F.3d 605, 610 (6th Cir. 2002); Keaton v. State of Ohio, 2002 U.S. Dist. LEXIS 19993 (S.D. Ohio 2002) (copy attached hereto). Jones cannot demonstrate a prima facie case under these requirements.

### 4. Plaintiff Cannot Demonstrate A Prima Facie Case Because He Can Not Demonstrate A Materially Adverse Employment Action.

It is well settled that to satisfy the second element of the prima facie case, the adverse employment action must be "materially adverse". Hollins v. Atlantic Co., 188 F.3d 652 (6th Cir. 1999); Bowman v. Shawnee State University, 220 F.3d 456, 461-62 (6th Cir. 2000). The Sixth Circuit has consistently held that unless employment actions involve some significant detriment, they are not materially adverse and, thus, not actionable. See, e.g., Roelen v. Akron Beacon Journal, 199 F. Supp. 2d 685 (N.D. Ohio 2002) (De minimus employment actions are not

---

[8] Plaintiff also has asserted parallel claims under Ohio's anti-discrimination statute, ORC § 4112.02(A). The analysis for claims under the Ohio employment discrimination statute is identical to that for Title VII claims. See, Barnes v. GenCorp., Inc. 896 F.2d 1457 (6th Cir. 1990); Plumbers v. Steamfitters Commt. v. Ohio Civil Rights Commn. 66 Ohio St. 2d 192, 196, 421 N.E. 2d 128, 131 (1981).

materially adverse and therefore not actionable.); White v Burlington Northern v. Santa Fe Ry. Co., 310 F3d 443 (6th Cir. 1999)(De minimus employment actions are not actionable as the change in employment conditions must be more disruptive that a mere inconvenience or an alteration of job responsibilities).

The Sixth Circuit and Ohio courts recognize that an adverse employment action "must materially affect the plaintiff's terms and conditions of employment". See, e.g., Toth v. Ohio Dept of Youth Services, 113 Ohio Misc. 2d 1, 754 N.E. 2d 305 (2001)(Counseling and unpleasant working relationship does not rise to level of a materially adverse employment action.); Bowers v. Hamilton School Board , 2002 Ohio App LEXIS 1356 (Ct. App. 12th App. Dist. March 25, 2002)(copy attached hereto). (tension and unpleasant working relationship not sufficient to demonstrate an adverse employment action); Hopkins v. Electronic Data System Corp., 196 F3d 655 (6th Cir 1999) (transfer not "material adverse" change when receive same pay and benefits.); Williams v. AP Parts, Inc. 252 F Supp 2d 495 (N.D. Ohio 2003) (court observed that discipline can constitute a significant change in employment status if it is a materially adverse change in the terms and conditions of employment, but the anti-discrimination statutes do not insulate an employee from discipline for violating the employer's rules or disrupting the workplace).

The Sixth Circuit in Primes v. Reno 190 F3d 765 (6th Cir 1990), held that even unsatisfactory performance reviews did not rise to the level of an adverse employment action:

> If every low evaluation or other action by an employer that makes an employee unhappy or resentful were considered an adverse action Title VII would be triggered by supervisor. Criticism or even facial expressions indicating displeasure. Paranoia in the workplace would replace the prima face case se as the basis for a title VII cause of action.

Jones does not identify any unfair incidents of discipline during his employment. The failure of Jones' proof as to the "promotions" to the Lineperson "C" is addressed above. It is significant to note that Jones was being paid at a higher level as a Manual Technician in 2001 than a starting Lineperson "C" at the time he voluntarily quit. (Reinhard Affid., ¶ 11). Thus, Jones' prima facie case fails on the grounds that Jones cannot demonstrate a materially adverse employment action.

5.    **Plaintiff Cannot Demonstrate A <u>Prima</u> <u>Facie</u> Case Because He Cannot Demonstrate That Similarly Situated Employees Were Treated More Favorably.**

In applying the last prong of the <u>McDonnell Douglas</u> analysis, the Sixth Circuit has explained that the plaintiff must show that the "comparables" are similarly-situated in all respects.  <u>Mitchell v. Toledo Hosp.</u>, 964 F.2d 577, 582 (6th Cir. 1992).  The <u>Mitchell</u> Court held that, "to be deemed 'similarly situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." <u>Id.</u> at 583; <u>Warfield v. Lebanon Correctional Inst.</u>, 181 F. 3d 723 (6th Cir. 1999) (concluding a discrimination plaintiff has the burden to establish that the other employee's acts are comparably serious to his or her own infraction); <u>Williams v. Cargill, Inc.</u>, 159 F. Supp. 2d 984 (S.D. Ohio 2001) (comparing oneself to others not similarly-situated "in all relevant aspects" and to others who have not committed similar acts of comparable seriousness within the same time frame fails to demonstrate disparate treatment as a matter of law).

Jones' testimony fails to demonstrate that "similarly situated" individuals not in the protected class were treated more favorably in promotion as to the positions of Lineperson "C".

(See Reinhard Affid. And Supp. Reinhard Affid. ). Thus, Jones' prima facie case fails as a matter of law.

### 6.    CG&E's Legitimate, Non-Discriminatory Reasons Justified Its Actions As A Matter Of Law.

If the plaintiff is able to establish a prima *facie* case of discrimination, the burden of production shifts to the employer to assert a legitimate non-discriminatory justification for its actions.  Ang v. Procter and Gamble Co., 932 F.2d 540, 548 (6th Cir. 1991).  Once the employer has come forward with evidence of a legitimate reason for its actions, the burden shifts back to the employee to establish that the employer's proffered explanation is a mere pretext for unlawful discrimination.  Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1083 (6th Cir. 1994). CG&E has the burden of production on the issue of its legitimate, non-discriminatory reason, but the burden of persuasion remains with the Plaintiff at all times.  See, St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511, 113 S. Ct. 2742, 2749 (1993).

Assuming arguendo for purposes of this motion alone that Jones is able to demonstrate a prima facie case of race discrimination, which CG&E expressly denies, CG&E is entitled to summary judgment based on its legitimate, non-discriminatory reason for the failure to "promote" Jones to the Lineperson "C" position. In this regard, the evidence demonstrates that the other candidates were selected for the positions utilizing the EEOC validated Targeted Selection Process for the Lineperson Apprentice Program and the top scorers were the successful candidates (See Reinhard Affid. and Supp. Reinhard Affid. ).

### 7.    As A Matter Of Law, Plaintiff Is Unable To Demonstrate Pretext.

To demonstrate pretext, the plaintiff must produce sufficient evidence from which the jury could reasonably reject employer's explanation and infer that there was intentional discrimination by the employer. Braithwaite v. Timken, Co. 258 F3d 488 (6th Cir 2001).  Unsupported allegations are insufficient to demonstrate pretext. Vaughn v. Watkins Motor Lines, Inc. 291 F3d 900 (6th

Cir 2002). Subjective beliefs and feelings are similarly insufficient, as are subjective conclusory allegations. Ngeunjuntr v. Metropolitan Life Insurance Co., 146 F3d 464 (7th Cir 1998); Lomax v. Sears, Roebuck Co., 2000 U.S. App. LEXIS 33884 (6th Cir. 2000) (copy attached hereto); Chappell v. GT&E Products Corp., 803 F.2d 262, 268 (6th Cir. 1986) ("Mere personal beliefs, conjecture and speculation are insufficient to support an inference of age discrimination"); Rin Das v. The Ohio State University, 2003 U.S. App LEXIS 2236 (6th Cir. 2003)(copy attached hereto)(employee failed to produce competent objective materials evidence to prove discriminatory animus and disprove defendant's articulated legitimate business reason for her discharge); Smith v. Legget Wire Company, 220 F. 3d. 752 (6th Cir. 2000)(court observed that "Smith's vague assertion that there was a general attitude of discrimination at Adcom is insufficient to establish pretext); Wixson v. Dowagiac Nursing Home, 87 F. 3d 164 (6th Cir. 1996) (holding that plaintiffs failed to create issue of fact by alleging numerous instances of disparate treatment and hostile work environment in conclusory terms with no references to names, times and occasions).

        Jones has failed to demonstrate that the reasons for his failure to promote to the Lineperson "C" position proffered by CG&E were mere pretexts. Jones stated the Targeted Selection Materials were not unfair or discriminatory. He found the Field Assessment Test fair and passed it the first time that he took it. Further,  He did not observe anything unfair or discriminatory in the interviews. (See Statement of Facts, pp. ___).  Other than speculation and conjecture, there is a dearth of evidence that any conduct by CG&E in terms of a failure to promote was imposed based on race.

        **C.     Racial Harassment Claims Under Title VII**

        **1.     Plaintiff Cannot Demonstrate A Hostile Work Environment Or Racial Harassment As A Matter Of Law.**

To establish a prima facie case of hostile work environment harassment based upon race, a plaintiff must establish the following five elements:  (1) He was a member of a protected class; (2) he was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment had the effect of unreasonably interfering with the employee's work performance by creating an intimidating, hostile, or offensive work environment; and (5) employer knew or should have known of the harassment and failed to implement corrective appropriate action. See, e.g., Williams v. General Motors Corp., 187 F. 3d 553 (6th Cir. 1999); Haffer v. Seidner, 183 F.3d 506, 512 (6th Cir. 1999).  A hostile work environment plaintiff must establish that their work environment was objectively hostile and also that he or she perceived the environment to be hostile.  Williams at 564.. A court may not aggregate harassing conduct if it is attributed to separate and distinct motives Morris v. Oldham County Fiscal Court, 201 F 3d 784, 792 (6th Cir. 2000).

The United States Supreme Court has elaborated on what type of conduct can constitute harassment and form the basis for a hostile work environment claim.  See, Harris v. Forklift Systems, Inc., 510 U.S. 17, 114 S. Ct. 367 (1993).  To prevail, the employee must show conduct that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment."  See Harris v. Forklift Systems, Inc., supra; Meritor Savings Bank FSB v. Vincent, 477 U.S. 57, 67, 106 S. Ct. 2399 (1986).  Conduct that is "merely offensive" will not suffice to support a hostile work environment action.  Harris, supra.

In determining whether there was a hostile or abusive workplace environment, courts look to the totality of the circumstances.  See, Faragher v. City of Boca Raton, 524 U.S. 775, 787-88, 118 S. Ct. 2275 (1998).  Specifically, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

performance." Harris, supra at 23.; Hafford v. Seidner, 183 F. 3d 506 (6th Cir. 1999). The

Supreme Court has consistently held that "simple teasing, offhand comments, and isolated

incidents (unless extremely serious) will not amount to discriminatory changes in the terms and

conditions of employment." Faragher, 524 U.S. at 788.  Finally, the work environment must be

both objectively and subjectively offensive. Conduct that is not severe or pervasive enough to

create an objectively hostile or abusive work environment that a reasonable person would find

hostile or abusive is not actionable. Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 118 S.

Ct. 998 (1998) These standards for judging hostility are sufficiently demanding to ensure that

Title VII does not become a "general civility code." Id. at 81, 118 S. Ct. 1003.

     Jones has failed to demonstrate any racial harassment, let alone racial harassment that

was sufficiently severe and pervasive to be objectively and subjectively hostile as a matter of law

and his claims are not actionable as a matter of law. (See Statement of Facts, pp. 1-4).

    **2.**      **Defendant, CG&E, Exercised Reasonable Care To Prevent And Promptly**
             **Correct Any Harassing Behavior And Plaintiff Failed To Take Advantage Of**
             **Corrective Opportunities.**

     Even assuming arguendo for purposes of this motion alone that Jones demonstrated

actionable harassment, which is expressly denied, Jones must establish that the employer bears

the responsibility for the harassment. If the harassing party was the plaintiff's supervisor, the

employer will be strictly liable where the harassment culminated in a tangible job action against

the employer. See, e.g., Faragher v. City of Boca Raton, 524 U.S. 775, 807, 118 S. Ct. 367

(1993); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765, 118 S. Ct. 2257 (1993). If there was

no tangible job action, the employer can avoid liability by establishing (1) that it exercised

reasonable care to prevent and promptly correct any harassing behavior, and (2) that the plaintiff

unreasonably failed  to take advantage of corrective opportunities. Farragher, 524 U.S. at 807;

Ellerth, 524 U.S. at 765. If the harassers were merely co-workers, the employer will be liable

#110721v2                                            15

only where the plaintiff can demonstrate that the employer knew or should have known of the harassment and failed to take appropriate remedial action. EEOC v. Harbert-Yeargin, Inc., 266 F. 3d 498, 518 (6th Cir. 2001); Courteny v. Landair Transp., Inc., 227 F.3d 559, 564-65 (6th Cir. 2000).

Jones fails to identify any incidents of harassment based on race by supervisors or co-workers. There is no evidence that the single reference to a "cotton field" (which Jones did not report notwithstanding his knowledge of the Company's harassment policies) was known or should have been known by CG&E. CG&E's  strong policies and training of  employees on workplace harassment including harassment based on race is amply demonstrated by the record and Jones' testimony. (See Statement of Facts, pp. 4-5).

**D.    Any Claim for Constructive Discharge by Jones Is Not Actionable As A Matter of Law.**

In order to demonstrate a constructive discharge claim, Jones must demonstrate that 1) "the employer  . . . deliberately created intolerable working conditions, as perceived by a reasonable person," and 2) the employer did so "with the intention of forcing the employee to quit." Moore v. Kuka Welding System, 171 F.3d 1073, 1080 (6th Cir. 1999); Davis v. Washington County Open Door, Home,  2000 U.S. Dist LEXIS 20007 (S.D. Ohio 2000)(copy attached hereto)(decision to resign from new position simply because it was less desirable than former position and unfriendliness by co-employees did not amount to intolerable working conditions wherein a reasonable person would have felt compelled to resign); Vannoy v. OCSEA Local 11, 36 F. Supp. 2d 1018 (S.D. Ohio 1999)(loss of supervisory authority, unpleasant exchanges with supervisors, reprimands for performance and attendance and being expected to work in Columbus with long term employment option does not constitute); Spires v. The Ohio State University, 2001 U.S. Dist. LEXIS 24036 (S.D. Ohio, April 25, 2001)(copy attached

hereto) (plaintiff must demonstrate that the employer intended and could reasonably have foreseen that the impact of its conduct would cause the employee to quit).

Wilson v. Firestone Tire & Rubber Co., 932 F. 2d 510 is directly on point to the within case. In Wilson, the court found that "[T]he presentation of other legitimate options for continued employment, even in less prestigious positions,  precludes a finding that he was constructively discharged  unless the proffered employment options would have been  'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.' " citations omitted. Id. at 515.  The court observed that "No one at Firestone forced or encouraged Wilson to select the early retirement option, and there is no indication that Firestone intended to make his working conditions unpleasant had he stayed. " Id. Likewise, there is no evidence whatsoever that CG&E intended to make Jones working conditions intolerable, nor could have reasonably foreseen that Jones would quit. Jones testified that there was nothing difficult or unpleasant about his job as a Manual Technician at the time he quit in 2001. In fact, he was being paid more than starting linepersons. [9]

Further, Ohio law recognizes that a person who quits because of a problem with working conditions must generally notify the employer that there is a problem in order to give the employer an opportunity to address the problem. King v. State Farm Mutual Auto Insurance Co., et al., 112 Ohio App. 3d 664, 669 (Ohio Ct. App. 6th Dist. 1996)(summary judgment granted where employer did not know of employee's health problems until she quit). Jones did not provide any notice of his intent to resign as a result of his failure to obtain a Lineperson "C" position.

---

[9] Notably, Jones conceded that he sought no other positions while with CG&E.  Thus, his claim is not based on a failure to promote, but rather on a failure to promote into a particular position.

Further, Jones cannot even demonstrate that he suffered an adverse employment action, let alone a constructive discharge. A plaintiff must demonstrate that he or she suffered from a termination, demotion, material loss of benefits or other factors and Jones cannot even demonstrate an adverse employment action. *See, e.g.*, <u>Jones v. Butler Metropolitan Housing Authority</u>, 2002 U.S. App. LEXIS 13358 (6th Cir. 2002)(copy attached hereto)(summary judgment granted where employee failed to demonstrate that a failure to promote was an adverse employment action). Jones was not demoted, disciplined, degraded, suffered no reduction in salary, responsibilities or change in assignment, and was not badgered, harassed or humiliated by anyone during his tenure with CG&E, let alone in the months prior to his decision to voluntarily quit. (see Statement of Facts, pp. 1–6).   Thus, the evidence wholly fails to demonstrate that Jones' working conditions were so difficult or intolerable that a reasonable person would have felt compelled to resign or any intent on behalf of CG&E. Thus, Jones' constructive discharge claim fails.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant, CG&E, respectfully request that summary judgment be entered in its favor as to all claims by Plaintiff, Rodney Jones, there being no genuine issue of any material fact and this Defendant being entitled to summary judgment as a matter of law.

Respectfully submitted,

/s/ Jill T. O'Shea_____
Jill T. O'Shea        (0034692)
Attorney for Defendant, Cinergy Corp.
139 E. Fourth Street, 25 Atrium II
P.O. Box 960
Cincinnati, OH 45201-0960
Phone:  (513) 287-2062
Fax:  (513) 287-3810

/s/ Gregory V. Mersol_____
Gregory V. Mersol (0030838)
John B. Lewis (0013156)
BAKER & HOSTETLER LLP
3200 National City Center
1900 East Ninth St.
Cleveland, OH 44114-3485
Telephone: (216) 621-0200
Facsimile: (216) 696-0740

*Attorneys for Defendant*
*Cinergy Corp.*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading was forwarded via ordinary mail this <u>28th</u> day of July, 2004 to:

Paul H. Tobias
David D. Kammer
TOBIAS, KRAUS & TORCHIA, LLP
414 Walnut Street
Suite 911
Cincinnati, OH 45202

David W. Sanford, Esq.
Sanford, Wittels & Heisler, LLP
2120 K Street NW
Suite 700
Washington, D.C. 20037

Barry Vaughn Frederick
Herman Nathaniel Johnson, Jr.
Robert L. Wiggins
Ann K. Wiggins
Susan Donahue
Robert F. Childs
Wiggins, Childs, Quinn & Pantazis, P.C.
1400 South Trust Tower
420 North 20th Street
Birmingham, Alabama 35203

#110721v2                                    19

Grant E. Morris
Law Offices of Grant E. Morris
7 DuPont Circle, N.W.
Suite 250
Washington, D.C.  20036

/s/ Jill T. O'Shea_____
Jill T. O'Shea