IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BILLY BRANTLEY, et al., | : | Case No. C-1-01-378 |
| | : | |
| Plaintiffs, | : | Judge Michael H. Watson |
| | : | |
| vs. | : | |
| | : | DEFENDANT, CINERGY CORP.'S, |
| | : | REPLY MEMORANDUM |
| CINERGY CORP., | : | IN SUPPORT OF |
| | : | MOTION FOR SUMMARY JUDGMENT |
| Defendant. | : | AS TO PLAINTIFF, TODD TOLBERT |

**I.  INTRODUCTION**

Plaintiff, Todd Tolbert ("Tolbert" or "Plaintiff"), cannot identify any racially offensive statements by any decision makers who affected his employment.  He identifies no direct evidence of discrimination and cannot contest that the weight restriction imposed upon him was itself dictated by objective ANSI and OSHA standards with which Cinergy is obligated to comply.

Lacking any true evidence of discrimination, Tolbert relies on isolated and admittedly time-barred allegations (early '90's); inadmissible hearsay testimony; incompetent subjective beliefs (*e.g.*, his "perception" of statements and his performance evaluations); and trivial and non-materially adverse incidents (*e.g.*, supervisor instructing higher classification employees to direct the work to be performed) in an attempt to create an issue of fact of disparate treatment.

1

#134474

Because such evidence creates no genuine issue of material fact, summary judgment should be granted against him.

## II. REPLY STATEMENT OF FACTS

### a. Plaintiff Solely Relies On Isolated. Inadmissible and Immaterial Allegations Which Are Time-Barred Under The Statute Of Limitations As To Alleged Different Terms And Conditions Of Employment

Tolbert's own statement of facts demonstrates that he seeks to rely upon hearsay, fragments of evidence, stale incidents, and selective disregard of his own testimony. For example, on pages 14 and 15 of his response, Tolbert relates a hearsay report dating from the time frame he was as a Groundperson (**1990-1991**), that a union employee once stated that he did not want to get on the same truck as Tolbert, and his belief that allegedly as a result of that refusal he was somehow denied training opportunities. This argument stands in stark contrast to Tolbert's deposition testimony that he could not state that the co-worker's refusal was based on race. (p. 56:20-24; p. 57:1-19). Tolbert similarly relies upon his own inadmissible subjective belief and speculation that two supervisors would explain details of work to others in his absence while they worked elsewhere or after sending him and another co-worker to work elsewhere. [1] Yet, Tolbert confirmed that he was never denied instruction or help as a Groundperson. (p.72: 4-24; p. 73:1-18).[2]

Tolbert next relies upon the mildest of incidents during the time frame that he was a Lineperson "B" between **1992 and 1995, a decade ago. According to Tolbert,** a supervisor, named Don Kramer ("Kramer") told Tolbert and a co-worker to stop talking and to complete their work at the end of the work day and when everyone else had finished their jobs. (p. 90:4-

---

[1] There is absolutely no reference that they were sent to "pick up trash" in the testimony cited by Plaintiff on p. 15.

[2] Plaintiff identifies no alleged disparate treatment as a Lineperson "C" (1991-1992) on pages 14-16 of his memorandum.

2

#134474

24; p. 91:10-23). This trivial, distant incident in which no discipline was issued not only fails to establish race discrimination, but ignores Tolbert's own testimony that his supervisors fostered a military type atmosphere that applied to both African-Americans and Caucasians. (p. 92:22-24; p. 93:1-7)[3]

With respect to the time frame that he was a Lineperson "A" **(1995 to 2002)**,[4] Tolbert challenges the content of an accident report concerning an electrical contact incident in August 1998. Tolbert in no manner addresses the uncontroverted fact that a Caucasian employee received more severe discipline (see pages 5 and 6 of Defendant's Motion for Summary Judgment), but relies upon his irrelevant subjective disagreement with the contents of the accident report, no discipline issued.

Tolbert alleges one instance of "denial of training," but fails to note that he is comparing decisions made by different supervisors under different circumstances. While Tolbert believed that one supervisor cross-trained his employees by having them come into the office for one week, he conceded in his deposition that this individual did not supervise him and actually worked in another district. (p. 115:22-24; p. 116:10-15; p. 117:1-3).[5] There is no evidence, and Tolbert cites none, that this supervisor ever denied office rotations to African Americans or that his own supervisor ever offered such a program to any Caucasian employees in Tolbert's district.

---

[3] Plaintiff emphasizes Kramer did not speak to them directly and instructed other (higher classification) employee to tell them what to do (p. 104:8-20; p. 108:7-24; p. 109:1-6) and his subjective perceptions of Kramer's evaluations on page 15. This inadmissible and immaterial testimony fails to demonstrate disparate treatment based on race; fails to identify specific Caucasian employee treated better in evaluations by Kramer; and any racially discriminatory intent. Moreover, Plaintiff testified that he had never received negative evaluations based on his race and could not recall any other alleged "unfair" written evaluations when he was a Lineman B. (p. 106:5-24; p. 107:1-16).

[4] He was promoted in 2002 to Senior Lineperson "A."

[5] The only other African-American who requested same has still another supervisor, was not in Zorb's district and was a Groundperson Driver "A" denied because of his job classification. (p. 119:1-15)

### III. TOLBERT'S ALLEGED FAILURE TO PROMOTE CLAIMS ARE WITHOUT MERIT

Even apart from his statement of facts, Tolbert relies throughout his brief on time-barred, inconsequential and nondiscriminatory events.

#### a. Alleged 2 to 6 Month Delay in Promotion to Lineperson "C" in 1991

Tolbert first asserts he was somehow "delayed" in his promotion to Lineperson C (an admittedly time-barred occurrence) between 2 and 6 months in **1991**. (p. 26:14-20; p. 73:19-24; p. 74:1-24; *see, also*, pages 1-2 of Defendant's Motion for Summary Judgment). In doing so, he omits that at least one of the employees allegedly promoted ahead of him included Golden Watson, an African-American, who was hired at the same time as him and yet promoted two to six months earlier, negating any inference of race discrimination. (p. 29:10-24; p. 1-20).[6] Tolbert also conveniently omits that fact that the Company **timely promoted him** through the lineperson job progression based on written examinations that were fair, nondiscriminatory, and tailored to the lineperson program. (see pages 1-2 of Statement of Facts of Defendant's Motion for Summary Judgment).

#### b. Temporary Training Crew Lead in April 1999

Tolbert applied for the posted position of a Temporary Training Crew in April 1999 and confirmed that he was denied the lead position because of the weight issue and that he had no information that it was based on race. (p. 120:21-22; p. 121:14-16; p. 352:1-23). Tolbert ignores that he was involved in a serious electric accident which resulted in discipline in August 1998, nine months prior to bidding on this position. Plaintiff identifies no comparators for **this** lead

---

[6] Plaintiff relies on inadmissible hearsay from a "discussion with another union employee" that it was delayed because on his improper backing of trailers and driving of larger vehicles. (p. 25:8-20) Balzhizer, his supervisor, stated to him that he required more work using general equipment. (p. 26:2-6). Plaintiff's alleged comparator involved an incident where a female Caucasian employee was reprimanded regarding the way she was driving by other supervisors, not Balzhiser, and Tolbert did not know if it involved damage to the company vehicle

person position who was treated more favorably or any evidence of racial intent. (emphasis added).[7]

Plaintiff's attempt to create an inconsistency (pp. 17 and 54) between Ward's Affidavit and Defendant's response to Interrogatory No. 4 wholly fails for the reason that the interrogatory response refers to the evaluation by supervisor, Glenn Neidlinger, considered as to the Temporary Training Crew Lead position in April 1999 (p. 11 of Exhibit 5 to Plaintiff's Appendix) whereas ¶ 26 of Dave Ward's Affidavit states "Todd Tolbert was not interviewed for the Field Supervisor position for reasons, including unfavorable supervisor evaluations from supervisor, Cliff Zorb and Glenn Neidlinger" and thus considered as to job posting 99-347 for Electric T&D C&M Field Supervisor Position in September 1999 below.

  c. **Electric T&D C&M Field Supervisor in September 1999**

With respect to the Field Supervisor in T&D C&M, Job Posting #99-000347, posted in September 1999, Tolbert could not identify exactly how he applied for the job, how it was sent to Human Resources, how many applied for the job, how many individuals were interviewed for the position or who got the position. (p. 345:5-24; p. 346:1-7). He again identifies no comparators "similarly situated" who applied for Electric T&D C&M Field Supervisor in **September 1999** who were treated more favorably or any evidence of racial intent in the targeted selection process for the position. For example, there is no evidence Caucasian comparators who were involved in a serious electric contact incident within a year of the posting and repeatedly was non-compliant with the maximum weight restriction for over 4 years. Thus, in no case can Tolbert identify any position he did not receive on account of his race.

---

on that occasion. (p. 33:12-24). Tolbert's perception of his performance in driving equipment fails to create an issue of fact.
[7] Plaintiff's reliance on Sibcy and Kramer as comparators fail for the reason that Kramer was promoted to Field Supervisor in 1993 and Sibcy was promoted to a different position, District Coordinator, in 2003.

5

#134474

## IV. TOLBERT EXPERIENCED NO DISCRIMINATION IN CONNECTION WITH THE COMPANY'S AGENCY-DICTATED WEIGHT REQUIREMENT.

The core of Tolbert's claim is his contention that he should not have been subject to the Company's 275-pound weight limit applied to Linepersons. In making that contention, however, he omits his express confirmation that the 275-pound maximum weight restriction relates to the essential job functions of the Lineperson progression. He overlooks his own admission that the requirement was not simply a company edict, but was mandated by legal and third party standards, ANSI and OSHA, and for the obvious reason that a lineperson working in a bucket should not exceed the weight dictated by the equipment's manufacturer. (see pages 3 and 4 of Motion for Summary Judgment).

Tolbert ignores these undisputed safety and legal concerns, and relies instead upon his own inadmissible conjecture about the weight of others during unspecified or irrelevant time frames. He testified that "he suspects" but "couldn't say for sure" that Paul Dennis ("Dennis")[8], Gary Naso (sic)("Nastold")[9] and Eric Sibcy ("Sibcy")[10] weighed more than 275 pounds **at the time of his October 2, 2002 deposition.** He testified that he suspected Rick Cutsinger ("Cutsinger") of being overweight but could not identify in what time frame[11] and he thought

---

[8] As to Dennis, he knew he was weighed when he was hired and "maybe six months or so after coming in with the company" but did not know if he was monitored. (p. 129:8-15; p. 215:1-6).

[9] With respect to Nastold, his testimony is based on the inadmissible hearsay of his co-worker. The exercise bike is a red herring and non-issue where Tolbert did not know if the Company provided the bike or if it was for use by others. (p. 13:20-24; p. 131:1-24; p. 132:1-5; p. 215-19-22; p. 216:1-16)

[10] Plaintiff testified that Sibcy was "recently promoted" and speculated that he was overweight at the time of his October 2, 2002 deposition. (p.125:13-24; p. 126:1-10; p. 393:24; p. 394:24)

[11] He suspects Cutsinger was at or above the 275 pound weight limitation but does not identify in what time frame and could not state if he was ever monitored. (p.126:11-18; p. 127:1-7; p. 129:3-11).

that "maybe" Don Kramer ("Kramer") was overweight in the time frame of 1996[12] on pages 16 and 52 of his memorandum.  Guesswork about a person's weight.

Tolbert fails to address Coleman and the case law cited by Defendant on pages 23-24 of its summary judgment.  That authority, which is controlling as to Defendant's legitimate and non-discriminatory basis to impose discipline for Tolbert's repeated failure over a period of years to comply with the maximum weight restriction, demonstrates that summary judgment should be granted.

There simply is no evidence of any similarly situated Caucasian employees in the Electric T&D C&M departments who was significantly over the manufacturer-dictated weight limit for substantial periods of time and who was patiently given years by his employer to bring himself within the standard.  Tolbert merely relies of the allegations of his Complaint that he was singled out and harassed and subject to regularly scheduled weigh-ins.[13] (p. 395:11-24; p. 395:1-12).  Thus, Tolbert cannot demonstrate disparate treatment, pretext or racial animus.

---

[12]     Plaintiff testified "I think maybe Donald Kramer was overweight in the time frame of 1996 and speculates further that he was "promoted somewhere around that time frame" Clearly, Kramer is not arguably substantially same or similarly situated when promoted for a supervisory position years ago in 1993 for which Tolbert did not apply which would necessarily involves different circumstances such as decision-makers.

[13]     Tolbert first failed the weight limitation of 275 pounds at a **routine DOT examination** in June of 1994 (292.4 pounds); was weighed and failed again at a check for condition on November 1995 and was restricted form working on OSHA regulated ladders and was compliant and reached weight and resumed full duty in January 1996 (no loss of pay); failed again as part of a **routine DOT examination** on May 1, 1996 (303 pounds) and again placed on work restrictions as to ladders; agreed to a three month period in which to lose the weight in order to meet the limitation and periodic weigh-ins and was compliant as of August 1996; was not weighed for a period of time until April 1999 and again failed (326.9 pounds).  Between 1994 and April of 1999, notwithstanding his repeated violations of the maximum weight restriction, Tolbert experienced no decrease in his wage or job classification.  Rather, during this period of 5 years, the Company did nothing other than afford him additional time to lose the weight.  (p. 168:13-24; p.169:1-3).  Plaintiff could not state the weigh-ins and resulting restrictions were based on race. (p. 223:21-24; p. 224:1-13)

Most recently at an annual weigh-in of Electric T&D C&M linepersons for the year 2004, Tolbert was weighed on March 23, 2004 and weighed 306.0 pounds. Tolbert thereafter was weighed pursuant to the Weight Program subject to a Last Chance Agreement. On October 19, 2004 most recently, Tolbert was weighed and his weight was 260.2 pounds.

Tolbert was given until September 2001 to reach his goal weight and on September 11, 2001 he was reinstated to a lineperson A.  (p. 254:12-15).

#134474

## V.     THERE IS NO HOSTILE WORK ENVIRONMENT CLAIM

Tolbert's hostile work environment claims are based on isolated and dated allegations with a complete lack of specificity about the incidents such as who made the statement, when, how frequently, whether they were reported, or any other details as addressed in Defendant's Motion for Summary Judgment on pages 6-8.  In his memorandum, Tolbert exaggerates his own testimony and frequently leaves out his own simultaneous admissions that demonstrated that the alleged conduct was not harassing in nature.  The only "incidents" Tolbert actually witnessed were infrequent and isolated, often dated and well beyond the statute of limitations.[14]  These incidents were in no manner physically threatening and consisted of offensive utterances that were not directed against African-Americans.[15]  These and others are based on mischaracterizations of the record,[16] irrelevant subjective beliefs,[17] and isolated comments he could not identify were based on race.[18]  The rest involve other employees and are based on

---

[14]     *See*, *e.g.*, Balzhiser statement sometime between 90-91 on pages 18 and 16. (p. 34:10-21; p. 35:1-13)

[15]     *See, e.g.*, "gang bangers" comment and Osama Bin Ladin comments after 911 on page 18 (p. 45:15-24; p. 46:1-12).

[16]     An example of Plaintiff's repeated mischaracterizations of the record is evidenced by his statement that "Tolbert has witnessed confederate flags on employee **lockers**, **hard hats,** personal vehicles and common areas" on page 18 and page 56. As demonstrated on pages 8 of Defendant Motion for Summary Judgment, Plaintiff observed **one confederate flag sticker on one occasion inside a locker** but can not state when, where, whose locker, or even if it was ten years ago and **one confederate flag sticker on one helmet** but could not state, when, where, on whose helmet, etc. (emphasis added) (p. 95:20-24; p. 96:1-24; p. 97:1-24; p. 98:1-7, 12-17, 24; p. 99:1-11, 17-24; p. 100:1-6).

[17]     *See, e.g.*, Subjective perception that Balzhiser (dating back to 90-91) on page 18 treated African-American employees with less respect.  He identified Woodward Clark as an employee subject to such alleged treatment but could not identify any specifics but rather stated it was based on Balzhiser's attitude but could not identify what he meant by attitude. (p. 31:21-24).

[18]     Plaintiff again mischaracterizes that "African-American **employees** were labeled stupid, dumb and ignorant by co-employees" on page 18 referring to **one employee**, Ollen Colbert, and statement by co-workers "basically that he was stupid, he didn't know his work"  (emphasis added). Tolbert could not identify anyone who made such a statement and confirmed that no racial statements were made about Ollen Colbert to him or in his presence. (p. 309:11-124; p. 310: 1-12).

8

#134474

inadmissible hearsay[19] and should be disregarded pursuant to Rule 56(e) of the Federal Rules of Civil Procedure. Tolbert summarily asserts that "[C]ollectively, Tolbert's entire employment experience with Cinergy Corp. has been touched or otherwise blemished by racial harassment and discrimination" but his sole authority for that extreme proposition is the deposition citation as follows that provides no such support:

Q: So what - - what is the basis of your identifying Goines as a witness? What do you – go ahead.

A: I'm sorry. Basically the ongoing treatment of African Americans at Cinergy.

(p. 406:16-20).

Tolbert cites no case law in support of his hostile environment or racial harassment claim because none exists and likewise fails to address the case law cited on pages 17-20 of Defendant's Motion for Summary Judgment.[20]

## VI. THE CLAIMS OF DISABILITY DISCRIMINATION ARE COMPLETELY MISPLACED

Unable to demonstrate race discrimination, Tolbert then suggests that he now wishes to pursue a claim of disability discrimination. Tolbert, however, has never amended his Complaint

---

[19] *See, e.g.*, Plaintiff again blatantly misrepresents that "Tolbert was aware of African-American **employees** being referred to as 'nigger' " on page 56 but again solely identified **one instance** based on inadmissible hearsay as to an employee named Fletch. (emphasis added, see, also, page 18) Tolbert identified this hearsay for the first time at his supplemental December 18, 2002 deposition and stated it occurred in the early 90's "maybe – somewhere between '91 and '93". (p. 303:20-24; p. 304:1-22).

[20] *See, also,* Evans v. Toys R Us Ohio, Inc., 2000 U.S. App. LEXIS 14076 (6th Cir. 2000) (attached hereto) ("evidence" based on inadmissible hearsay statements attributed to other employees who did not file affidavits or supporting depositions (i.e., manager had "disdain" for minorities") fails to controvert summary judgment in a failure to promote claim); Reese v. State of Ohio, 1998 U.S. Dist. LEXIS 17187 (S.D. of Ohio 1989) (attached hereto) (Plaintiff's reliance of inadmissible hearsay statements that she heard manager did not want any black employees in the furniture store with no proffered affidavit or other evidence to support her assertion fails to demonstrate racial harassment); Wilson-Simmons v. Lake County Sheriff's Dept. 982 F. Supp. 496 (N.D. of Ohio 1997) (reliance by plaintiff on hearsay with no first-hand knowledge of alleged racist e-mail and affidavit by co-worker "fraught with hearsay" were considered a "complete dearth of admissible and reliable evidence" of adverse employment actions and summary judgment was affirmed on racial discrimination claim); Edwards v. Wallace Community College, 49 F.3d 1517, 1522 (11th Cir. 1995) (summary judgment affirmed where "apart from hearsay problems; they were insufficient as to when the statements were made, how knowledge of them was acquired and when Edwards was informed of them (if she was).")

to include allegations of disability discrimination.[21] Further, his entire argument is premised on an incorrect assumption, bereft of any argument or legal authority, that weight or obesity automatically constitutes a disability. Plaintiff's self serving affidavit relied on page 19 fails to satisfy the requirement of substantially limited in life's major activities or precluded from a broad range of jobs as a matter of law. *See, e.g.* Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184 (2002) (carpal tunnel syndrome not a disability; a diagnosis alone does not establish a disability); Mahon v. Crowell, 295 F.3d 585 (6th Cir. 2002) (back injury precluding employee from holding 47% of jobs in the market not disabled). Tolbert, who contends that he can perform the essential functions (apart from his weight) of physically challenging lineperson work has simply failed to establish a "disability" as the Supreme Court in Williams defined that term.

Tolbert's further reliance on his speculation that his obesity is "related to a sleep disorder – sleep apnea" on pages 19 and 58 is inadmissible as double hearsay (alleged statement by his doctor) from lay opinion under Rule 56(e) of the Federal Rules of Civil Procedure and Rules 701(lay opinion), 802 (hearsay) and 805 (hearsay within hearsay) of the Federal Rules of Evidence. *See, e.g.,* Field v. Trigg County Hospital, Case Nos. 02-6440/6517 (6th Cir. Oct. 15, 2004) 2004 U.S. App. LEXIS 21437 (attached hereto) (hearsay statement of physician, even if testified to by an expert, is simply hearsay and should not be admitted). Tolbert proffers no expert testimony in support of his contention that he suffers from sleep apnea or that his condition, however diagnosed, is sufficiently debilitating to meet the high Williams standard. Further, any such contention is belied by the fact that Tolbert had surgery to correct any sleep apnea in December 1999, nearly five years ago. (p. 236:20-24; p. 237:1-3).

---

[21] The Complaint rather states "Plaintiff, Todd Tolbert, is an African-American, and is an employee of the Defendant, Cinergy Corp. Plaintiff has been denied equal employment opportunity for initial job assignments, promotion, wages, and other terms and conditions of employment by the Defendant **solely based on race** on page 2. (emphasis added).

10

#134474

Tolbert's attribution of his weight to sleep apnea also defies the undisputed record evidence. The record demonstrates that six months post surgery, Tolbert weighed 296 pounds and 6 ounces, but that after his corrective surgery he has steadily **gained** weight. (p. 240:15-18) At the 2004 annual weigh-in of Electric T&D C&M linepersons, Tolbert weighed **306** pounds on March 23, 2004 (*see* Footnote 14 on page 7 herein). Moreover, Tolbert cannot correlate his recent gastric by-pass with sleep apnea for which he had surgery in December of 1999, not does the fact that he elected to undergo gastric by-pass surgery establish that he is disabled under the Williams standard. Rather, it is evidence of a corrective measure since he most recently weighed 260.2 pounds on October 19, 2004 and further refutes that he qualifies as disabled.

Plaintiff's attempt to second guess the business judgment of Defendant (*see, e.g.*, p. p. 59) likewise fails to controvert summary judgment. *See, e.g.*, Chappel v GTE Products Corp., 803 F. 2d 261, 266 cert. Denied 480 U.S. 919 (1987)(6th Cir. 1986)(the "fact finder … may not focus on the soundness of an employer's business judgment"); Brownlow v. Edgecomb Metals Co., 867 F.2d 960, 964 (6th Cir. 1989) Pretext not demonstrated where employee mere second guesses Employer's business judgment); Manofsky v. Goodyear Tire & Rubber Company, 69 Ohio App. 3d 663, 669, 591 N.E. 2d 752,756 (1990) ([A]s a general rule, the judiciary will not second guess business judgments by an employer making personnel decisions).Tolbert posits that the Company could assign him a double-bucket truck full time. However, Tolbert acknowledged that if one of the employee's is over the weight limit than it would limit the weight of the other employee on the truck. [22] (p. 134:16-23). Further, Cinergy did not, as a matter of law, have to offer the accommodation of having such a truck dedicated to Tolbert's use. *See, e.g.,* Black v. Roadway Express, Inc., 297 F.3d 445 (6th Cir. 2002).

---

[22]   His reliance on two employees admittedly without weight issues, Messmer and Brooks, assigned double bucket trucks on p. 59 of his memorandum ignores his subsequent testimony on this issue and that Linepersons are assigned to crews who perform the work as a team.

#134474

Moreover, even if Tolbert was assigned to the double bucket truck, it would only be able to be used by him alone, which would significantly impact the ability of Cinergy employees to perform electrical line work. Tolbert's arguments do not address the cost of double bucket trucks, the availability or need for double bucket trucks for emergency overtime work, or a host of other practical issues relating to the essential job functions of a lineperson. Tolbert likewise fails to identify any white comparators who have been treated more favorably and provided with a double bucket truck as a permanent assignment.

Tolbert wholly fails to address or refute the cases cited by Defendant on pages 23-24 of its Motion for Summary Judgment as to the appropriateness of weight requirements in the workplace. Nor does he identify any basis to distinguish the Coleman decision cited by Defendant involving a Georgia utility with virtually identical weight guidelines and its holding that weight is generally not considered a disability under the ADA.

The single case Tolbert cites in his disability argument, Saw (sic) Smaw v. Commonwealth of Virginia, 862 F. Supp. 1469 (E.D.VA. 1994), actually supports summary judgment in this case. The Eastern District of Virginia affirmed summary judgment as to the employer on an alleged "perceived disability" case where the plaintiff was able to do the reclassified job of dispatcher versus a state trooper (as Tolbert is able to perform the lower classification of groundperson) and thus was unable to demonstrate that she was foreclosed from a broad range of job opportunities and not substantially limited as required by the ADA and Rehabilitation Act. Id. at 1475. The court observed that the regulations including working as a major life activity "does not necessarily mean working at the job of one's choice. Id. at 1473. The Smaw decision observed "The Sixth Circuit stands in accord, stating that 'an impairment that interfered with an individual's ability to obtain satisfactory employment otherwise was not substantially limiting within the meaning of the statute' Jasany v. United States Postal Service,

#134474

755 F 2d. 1244, 1248 (6th Cir. 1985)." Thus, Tolbert's disability claim, albeit not pled, is not actionable as a matter of law.

**4.    Plaintiff's Racial Demotion Claim Fails As A Matter of Law**

Moreover, Tolbert cannot demonstrate that he was treated less favorably than similarly situated non-minority employees because of his race. Tolbert argues that the Sixth Circuit in Erceqovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 356 (6th Cir. 1998), somehow diluted the high "similarly situated" standard set forth in Mitchell v. Toledo Hospital, 964 F.2d 577 (6th Cir. 1992), but that contention is simply untenable in light of both the opinion in that case and the holdings of numerous Sixth Circuit and Ohio courts. *See, also*, Peltier v U.S.A., Case No. 03-3623 (6th Cir. October 28, 2004)(attached hereto)(affirmed summary judgment on gender discrimination claims where male employees employee identified were not "similarly situated in all relevant aspects" citing to Gragg v. Somerset Tech. College, 373 F. 3d 763, 768 (6th Cir. 2004 (citing Mitchell v. Toledo Hosp., 964 F. 2d 577, 583 (6th Cir. 1992); Ercegovich, 154 F.3d at 353 (employees must be similarly situated in all relevant respects); Clayton v. Meijer, Inc, 281 F.3d 605 (6th Cir. 2002) (affirming summary judgment for employer, relying upon Mitchell, and holding that different disciplinary incidents were dissimilar as a matter of law); Gray v. Toshiba America Consumer Products, Inc., 959 F. Supp. 805; 1997 U.S. Dist. LEXIS 5697; 155 L.R.R.M. 2346 (6th Cir. 2001) (quoting Mitchell, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."); Henderson v. Cincinnati Bell Long Distance, Inc., 113 Ohio App. 3d 793, 796-97 682 N.E.2d 41; 1996 Ohio App. LEXIS 3898 (Hamilton Co. 1996) (affirming summary judgment on grounds

#134474

employees with different discipline records are not similar). Tolbert cannot satisfy this standard, but relies on guesswork and the mere allegations of his Complaint. He can identify no "comparators" similarly situated in all relevant aspects, and specifically can identify no Caucasian employees who were so seriously beyond the weight limit, who were over the weight limit for years as he was, or who were given an opportunity to lose weight for over five years with no discipline whatsoever. Thus, Tolbert cannot satisfy the similarly situated prong.

Nor can Tolbert demonstrate pretext. To establish this element, a plaintiff is required to show by a preponderance of the evidence either (1) that the preferred reasons had no basis in fact, (2) that the preferred reasons did not actually motivate the employment action or (3) that they were insufficient to motivate the employment action. Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th cir. 1994). Tolbert cannot establish any one of the three elements and wholly fails to address the case law cited by Defendant on pages 16-17 of its motion for summary judgment.

**VII.   PLAINTIFF CANNOT DEMONSTRATE A PRIMA FACE CASE OF FAILURE TO PROMOTE BASED ON RACE AND/OR PRETEXT**

Tolbert repeatedly asserts that the promotions of Kramer and Sibcy constitutes evidence of racial discrimination (i.e., "In fact, Donald Kramer was overweight as a Lineperson prior to his promotion to Supervisor" (emphasis in original) on page 52; "Eric Sibcy was promoted despite his weight issues, as was Don Kramer. Based on the similarities in weight issues between Tolbert and the white employee that were promoted, it seems more than likely that not the Defendant's decision was motivated by race and not Tolbert's weight" on page 53). Even putting aside the fatal problem that these conclusory assertions of "weight issues" lack any competent support, they also fail to satisfy the "substantially similar" requirement. Kramer was

14

#134474

promoted to Field Supervisor on **August 1, 1993** before the "time frame of 1996" when Tolbert "suspects" he was overweight. Sibcy was promoted to an entirely different position, Distribution Coordinator, effective **January 1, 2003** (four years after any alleged position for which Plaintiff applied). None of these decisions were made in the time frame Tolbert challenges (1999) and there is no showing that the same supervisors or circumstances existed at that time. Tolbert simply cannot satisfy the "substantially similar" prong.[23]

Tolbert misstates the unreported holding of Harrison-Pepper v. Miami University, 103 Fed. Appx. 596, 2004 U.S. App. LEXIS 13861 (6th Cir. 2004). Contrary to his assertion that the court "deemed it improper to consider, at the prima facie stage, the reasons a defendant proffers to justify its adverse actions against an employee" on page 51, the court's ruling was solely limited to the "qualified for the position" prong of the prima facie case and expressly concluded that it **was** appropriate to analyze the reasons proffered by the employer in the substantially similarly situated fourth prong. Harrison-Pepper supports that summary judgment is proper here because the Sixth Circuit affirmed summary judgment in a sex discrimination case in which the plaintiff failed to present sufficient evidence to demonstrate that she was treated disparately based on her sex. The court rejected her arguments of pretext for the reason that her salary comparisons to her male counterparts were based on salaries in different years and varied because of the available funding in those years. Applying Harrison-Pepper to this case, the two alleged comparators, Kramer and Sibcy were promoted in different years, involved a different job position in Sibcy's case, and did not have Tolbert's recent involvement in a serious electrical contact incident.

---

[23] Many of the similarly situated cases cited above affirmed summary judgment precisely because no substantially similarly situated Caucasians were treated more favorable. (*See, e.g.*,,Peltier, Gragg, Clayton, Henderson and Harrison-Pepper).

Moreover, Plaintiff wholly fails to demonstrate intentional discrimination by the Company as to the two positions for which he applied in 1999, the Training Crew Lead in April and Electric T&D C&M Field Supervisor in September, *See, e.g*, Braithwaite v. Timken, Co. 258 F3d 488 (6th Cir 2001) (to demonstrate pretext, the plaintiff must produce sufficient evidence from which the jury could reasonably reject employer's explanation and infer that there was intentional discrimination by the employer); Rin Das v. Ohio State University, 2003 U.S. App LEXIS 2236 (6th Cir. 2003) (employee failed to produce competent objective materials evidence to prove discriminatory animus and disprove defendant's articulated legitimate business reason for her discharge). Applying the law to this case, Tolbert's failure to promote race claim is not actionable as a matter of law.

**VIII. TOLBERT'S HARASSMENT CLAIM IS BARRED BECAUSE HE FILED NO CLAIM UNDER THE COMPANY'S POWERFUL ANTI-HARASSMENT**

Tolbert has no valid excuse for failing to use the Company's anti-harassment policy. He merely relies on a partial excerpt of his testimony and summary assertion that he did not report because he "felt that it was useless and that nothing would be done about his concern." (*see* pages 18 and 57 without citation to the record).[24] Yet, Tolbert wholly fails to address the uncontroverted evidence on pages 8 and 9 of Defendant's Motion for Summary Judgment demonstrating that the company promulgated a strong anti-harassment policy, that Tolbert was trained on that policy, that he knew of multiple avenues to report, and that he unreasonably failed to do so. This testimony, not unsupported "feelings," bar his claim.

---

[24] Plaintiff again relies on double and inadmissible hearsay raised for the first time at this supplemental deposition in December 2002 as to the "Fletch" occasion sometime in 1991 and 1993 but omits his testimony that it was reported that something happened between the two, the Caucasian male got upset and used the "n" word and Fletch slapped the employee before the supervisor arrived.

16

#134474

**V.     CONCLUSION**

The record clearly establishes that Tolbert's actual employer, CG&E, did nothing more than to enforce a reasonable weight limit based on legitimate and non-discriminatory reasons. Because Tolbert was not a victim of either race or disability discrimination, summary judgment should be granted in favor of Defendant, Cinergy Corp., as to all claims.

Respectfully submitted,

/s/ Jill T. O'Shea_____
Jill T. O'Shea (0034692)
Attorney for Defendant,
Cinergy Corp.
139 East Fourth Street – 25 AT II
P.O. Box 960
Cincinnati, Ohio 45201-0960
(513) 287-2062


/s/ Gregory V. Mersol_____
Gregory V. Mersol (0030838)
John B. Lewis (0013156)
BAKER & HOSTETLER LLP
3200 National City Center
1900 East Ninth St.
Cleveland, OH  44114-3485
Telephone: (216) 621-0200
Facsimile: (216) 696-0740

*Attorneys for Defendant*
*Cinergy Corp.*

#134474

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading was forwarded via ordinary mail this 28th day of October, 2004 to:

Paul H. Tobias
David D. Kammer
TOBIAS, KRAUS & TORCHIA, LLP
414 Walnut Street
Suite 911
Cincinnati, OH  45202


David W. Sanford, Esq.
Sanford, Wittels & Heisler, LLP
2121 K Street NW
Suite 700
Washington, D.C.  20037


Barry Vaughn Frederick
Herman Nathaniel Johnson, Jr.
Robert L. Wiggins
Ann K. Wiggins
Susan Donahue
Robert F. Childs
Wiggins, Childs, Quinn & Pantazis, P.C.
1400 South Trust Tower
420 North 20th Street
Birmingham, Alabama 35203

Grant E. Morris
Law Offices of Grant E. Morris
2121 K Street NW
Suite 700
Washington, D.C.  20037

/s/ Jill T. O'Shea_____
Jill T. O'Shea

#134474