IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BILLY BRANTLEY, et al., | : | Case No.C-1-01-378 |
| Plaintiffs, | : | Judge Michael H. Watson |
| vs. | : | |
| CINERGY CORP., | : | DEFENDANT' CINERGY CORP.'S, REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF, RODNEY V. JONES |
| Defendant. | : | |

## I. INTRODUCTION

Faced with his own admissions that he was not a subjected to race discrimination, Plaintiff, Rodney Jones ("Jones"), relies upon a tapestry of insufficient legal contentions, hearsay remarks, and selective disregard of his own deposition testimony. Because the undisputed evidence, including Jones' own admissions, demonstrate that he is not a victim of race discrimination, summary judgment should be granted against him as to all claims.

## II. WHAT IS NOT IN DISPUTE

Jones' response barely mentions the many facts that, by themselves, all demonstrate that summary judgment should be granted against him. He can identify no racist statement by any of the individuals who made decisions in connection with his employment. He can identify only one statement made to him, an oblique reference to cotton, made by a co-worker that was not witnessed by any supervisor and was so insignificant that even Jones did not report it.

Jones does not contest that he never filed a complaint of harassment under the Company's anti-harassment policy, despite being trained on it, and, cannot identify any legally sufficient reason for his failure. Jones cannot and does not identify any white employee with equal or lesser qualification who was hired for a job posting for which he applied. In short, Jones

concedes virtually all of the facts that demonstrate that summary judgment should be granted against him. His remaining contentions are either contrary to his deposition testimony, are irrelevant, or rely upon either hearsay evidence or no evidence at all. (see pages 1-6 of Defendant's Motion for Summary Judgment).

## III. ARGUMENT

### a. Jones' Hostile Environment Claim Is Insufficient As A Matter Of Law.

Jones' contentions with respect to his harassment claim exemplifies the weaknesses of all of his claims. Jones conceded at his deposition that he suffered no discrimination during the entire time that he worked in the company's Materials Management department. He conceded that the loss of his position in that department was the result of downsizing based upon his labor contract's seniority provisions, and not his race. (p. 42:23-24; p. 43:1-21; p. 43:1-5).

Jones similarly conceded that during the time that he was a Manual Technician, during the remainder of his career, he received no negative evaluations, suffered no unfair discipline, and had no cause to file any grievance regarding his employment. (p. 45:2-6; 50:14-16; 64:4-9). Indeed, Jones conceded at his deposition that he could identify no incident where he was held to a different standard than a white employee in any position. (p. 91:9-21; 93:2-5). Indeed, Jones conceded that he had no evidence in support of any discrimination claim:

> Q: I am saying in terms of the conditions of your employment, pay, discipline, treatment, can you identify any incidents where you were held to a different standard as a manual technician than Caucasian employees?
>
> A: I can't really explain it.
>
> Q: Can you identify any incidents?
>
> A: Not to my knowledge.
>
> Q: Or conduct?

A: Not to my knowledge.

(p. 93:6-15).

In the face of this deposition testimony, Jones relies upon a series of events that even he has conceded could not have constituted race discrimination. For example, Jones contends in his brief that he was denied overtime offered to whites. The sole incident Jones could cite, however, was a single incident in April, 1989 in which employees in the lineperson "C" job classification (a position Jones did not hold as he was classified as a Manual Technician) were called in for overtime (p. 221:1-11; p. 222:3-15). Jones identifies no African-American Lineperson "C" who were not offered overtime, and can identify no Manual Technicians, such as himself who were offered overtime. Jones' testimony reflects that overtime was allotted by **position**, not race.

Similarly, while Jones contends in his brief (at p. 65) that he was asked to perform cleaning tasks, he conveniently omits his own deposition testimony that white Manual Technicians were **also** required to perform such tasks and that he could not state that he performed such tasks more often because of his race (p. 93:12-23). Again, Jones' testimony underscores the fact that he was **not** a victim of discrimination, not that any discrimination existed.

Jones, in fact, conceded at his deposition that he never heard any racist or facially offensive comments, statements, or jokes from any supervisor throughout his employment. (Jones Dep. 52:15-24; 53:8-24; 54:1-9; 59:3-7).[1] Jones' sole allegation with respect to any

---

[1] Plaintiff relies on two inadmissible and irrelevant hearsay statements on page 24 and 25 of his memorandum which should be disregard by this court. Plaintiff relies on a double hearsay statement from Plaintiff Brantley related to a power plant employee made in the context of the lawsuit and after Jones quit. Plaintiff has no first hand knowledge as to the circumstances, the employee or what was done and thus they it is inadmissible and irrelevant. (p. 61:4-8, 12-14; p. 65:2-11). Plaintiff relies on a second inadmissible and irrelevant hearsay statement by Bruce Headen ("Headen") although he has no first hand knowledge what occurred, what Headen said to the supervisor (whose name he could not recall and was not one of Plaintiff's supervisors), what investigation the Company performed and any resulting consequences. (p. 56:7-13; p. 57:3-7) Even if this court were to improperly consider the inadmissible and irrelevant hearsay statements, Plaintiff wholly fails to satisfy the legal elements of a

racially offensive statement during the decade or more that he worked for the company was a single incident approximately four or five years ago, in which a co-worker made a reference to a cotton field. Jones could not recall what year the statement was made or the name of the employee that made the statement. Jones conceded that no supervisor witnessed the statement and that he never even reported the statement to management. (p. 57:19-24; p. 58:1-24; p. 59:1; p. 233:22-24; p. 233:1-19).

Jones' attempts to conceal his failure to report the incident with a smoke screen comprised of speculation that conflicts with his own deposition testimony. On page 24 of his memorandum, Jones represents that he "did not report this statement because he felt that nothing would be done about it" based on an incomplete snippet of his deposition testimony. Jones' testimony, however, belied any claim that he had any justification for refusing to report even that one incident:

> Q: . . . Did you ever go to the HR department about this statement about the cotton fields?
>
> A: No.
>
> * * *
>
> A: I just didn't.
>
> Q: Okay, there was no reason why not?
>
> A: No, no reason why not.
>
> Q: Did you ever call the 800 number hotline with reports of racially offensive conduct or comments at any point in time?
>
> A: No.
>
> Q: Why not?
>
> A: Just didn't.

---

hostile work environment claim.



#134473

Q: You had no personal experience that caused you not to?

A: None.

(p. 57:19-24; 58:1-24; 59:1; 233: 22-24; 233:1-19).

Not only did Jones admit in his deposition that he had no reason not to report any such statement, he conceded at his deposition that he attended company sponsored diversity programs, that those programs were mandatory, and that he believed they were a good experience. (p. 17:2-24; p. 180:6-24; p. 181:1-5).

Jones' testimony thus demonstrates that he suffered, at the very worse, only a single oblique statement that was so trivial that even he decided not to report it. His testimony demonstrates that Defendant is entitled to summary judgment on at least two grounds with respect to his hostile environment claim. First, his own testimony demonstrates that he did not suffer a sever and pervasive racially hostile working environment. Second, his testimony establishes the Company's Ellerth defense in that he was aware of, and was trained in, the Company's anti-harassment policy, and simply failed to use it without any legitimate excuse.

**b. Jones’ Failure To Promote Claims Are Invalid As A Matter Of Law.**

Jones’ contentions with respect to his lineperson “C” applications are equally merit less. Jones conceded at his deposition that he suffered no discrimination during the time that he worked in the Materials Management department, up until at least 1997. His claims in this case relate to employment applications he made between 1997 and 2001 for a lineperson "C" position.

With respect to his applications to the lineperson “C” position, Jones confirmed that the lineperson “C” positions were posted and listed on the job posting board and the Internet available to all employees which was not unfair or discriminatory. He received the candidate preparation package in 1997 which he reviewed just the first time and only for about an hour. He received the targeted selection materials around 1998 and reviewed them in their entirety on one

occasion for about an hour. He did not review the materials each time that he was interviewed and never filled out written responses or made notes per the instructions. He has no knowledge that the targeted selection materials were unfair or discriminatory based on race. (p. 100:7-17; p. 112:12-24; p. 113:1-10; p. 115:23-24; p. 116:1-2; p. 114:19-22).

Jones further has no information or knowledge that any supervisor in the lineperson process acted in a racially discriminatory manner and no racial comments were expressed anywhere in the process. He, for example, could not state that Ken Toebbe ("Toebbe"), the hiring manager, acted unfairly or discriminated based on race. (p. 140: 17-24; p. 238:11-24; p. 239:1-3; p. 240:12-15). He did not observe anything unfair or discriminatory in the actual field assessment testing or interviews, and did not experience any discriminatory treatment at any time by the individuals involved in the testing or interviews. He has no knowledge that the scores were inappropriate or incorrect or that any of the successful candidates had a lower total score (field assessment and interview). (p. 122:24; p. 123:1-8; p. 125:10-24; p. 125: 22-24; p. 126: 1-4; ; p. 128: 5-13; p. 131: 2-19; p. 143:10-24; p. 144:1-8; p. 147:6-11; p. 148:24; p. 149: 1-24; p. 1-13; p. 152:7-24; p. 153:1-24; p. 154:1-15).

It is also uncontested that hundreds of employees applied for such positions, that he himself was often one of 200 or more applicants for the positions when they became available, and that both African-Americans and Caucasians were disappointed applicants for those positions. (*see* Bernadette Reinhard Affidavit filed in conjunction with Defendant's Motion for Summary Judgment). Further, Jones cannot identify a single white candidate with lesser qualifications who was hired for a lineperson "C" position that he himself applied for. (*see* citations above)

Jones must also demonstrate both that he was qualified and treated less favorably than similarly situated, non-minority employees because of his race. *See, e.g.*, Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 356 (6th Cir. 1998). Jones blatantly misstates on page 60 that "Defendant does not contest that Jones is qualified for the promotion." A plaintiff's subjective belief as to his qualifications or work performance, however, does not create a material issue of fact. *See, e.g.*, Evans v. Toys R Us Ohio, Inc. 200 U.S. App. LEXIS 14076 (6th Cir. 2000)(attached hereto)(Court observed "even if one construes Evan's strong performance reviews to mean he was qualified for promotion, his qualifications alone do not show that other non-African American employees were promoted ahead of him because of race); Ost v. West Suburban Travelers Limousine, Inc., 88 F.3d 435 (7th Cir. 1996) (plaintiff's own opinions about work performance or qualifications does not sufficiently demonstrate pretext); Anderson v. Baxter Health Care Corp., 13 F.3d 1120, 1125 (7th Cir. 1994) (mere submission of materials from co-workers that employee's performance is satisfactory does not create an issue of material fact); Olsen v. Marshall & Isley Corp., 267 F.3d 597, 602 (7th Cir. 2001) (employee's perception of own performance does not create an issue of material fact).

Thus, Jones repeated reliance on his subjective perception of his own qualifications, good work history and performance in the interviews (*see, e.g.*, "[T]he third prong, whether Jones was qualified for the promotion, may readily be established by examining Jones' experience" on p. 60 and "[I]t is clear that Jones was qualified for the Lineperson 'C' position" on p. 64). Thus, his reliance upon his subjective contention that his job experience in the unrelated position of Manual Technician and good prior work performance should have been given more weight likewise fails. Neither Jones nor this Court, however, may second guess the Company's business judgment, particularly when Jones himself conceded that he could identify no discriminatory

actions during the hiring process. *See, e.g.*, Chappel v GTE Products Corp., 803 F. 2d 261, 266 cert. Denied 480 U.S. 919 (1987)(6th Cir. 1986)(the "fact finder … may not focus on the soundness of an employer's business judgment"); Brownlow v. Edgecomb Metals Co., 867 F.2d 960, 964 (6th Cir. 1989) (pretext not demonstrated where employee mere second guesses Employer's business judgment); Manofsky v. Goodyear Tire & Rubber Company. 69 Ohio App. 3d 663, 669, 591 N.E. 2d 752, 756 (1990) ([A]s a general rule, the judiciary will not second guess business judgments by an employer making personnel decisions).

With respect to the "substantially similarly situated prong" of a prima facie case, instead of addressing the undisputed facts which are fatal to his claims, Jones resorts to a shell game and relies upon individuals whose qualifications he did not know, who submitted applications for positions he did not, and his own subjective belief that his job experience in a different position should have counted for more than it did. Each of these contentions, however, is legally irrelevant.[2]

Jones contends, for example, that various employees were "hired off the street." (pp. 22 and 23). Jones fails to mention, however, that when questioned about these applicants, he conceded that he actually knew nothing about their credentials or background. For example, with respect to Bernadette Reinhard's husband, Jones testified at his deposition that he actually had no knowledge of his background except that he only worked for the Company for only a short period of time. (p.90:19-24; 91:1-8). This conclusory subjective belief and speculation falls far short of establishing that Jones lost a job bid to an equal or lesser qualified white

[2] Jones also remarkably contends that Defendant did not move for summary judgment with respect to two of his job bids. The Company did, of course, move for summary judgment with respect to all of Jones' claims even though several are beyond the statute of limitations, and submitted both deposition and affidavit testimony with respect to all of Jones' unsuccessful job bids. The contention that Defendant somehow did not move with respect to all of Jones' claims is simply without merit.

employee. Jones conveniently omits his testimony that Caucasian employees were likewise by-passed by external hires in the process.

With respect to Ron Brownstead, a successful applicant, Jones emphasizes a single statement by a supervisor after Brownstead was hired and his testimony that "I can't recall the correct – the exact words that he used, but it was something similar to keep an eye on him." Yet, nothing occurred when Jones worked with Brownstead. Jones acknowledged that Danny Morris, Jr., a second successful applicant, does a good job and works appropriately and safely. (p. 85:7-24; 86:1-24; 87:1-17; 87:20-24; p. 901-18). Jones cannot satisfy that "similarly treated in all relevant aspects" prong.[3]

However, by his own testimony, Plaintiff did not prepare written answers in advance (per the instructions of the targeted selection materials) and did not even review the material each time that he was interviewed. Jones does not and cannot dispute that he scored lower that each of the successful applicants for the lineperson "C" position. Nor does he dispute that internal Caucasian employees as well as African-Americans were passed over for promotion to lineperson "C". (p. 98:12-16) While Jones is forced to concede that he scored more poorly than other applicants, he points to a handful of incidents in which he failed to obtain the position because of his poor interview scores.

Jones, however, fails to note in his brief that the Company, through its targeted selection program, provided him with ample guidance on how to perform better in interviews. He also fails to note that the targeted selection program for the lineperson progression itself is an EEOC externally validated targeted selection process. Jones also conveniently omits the fact that his overall scores improved over time and the fact that he was the fifth candidate just below the top

---

[3] Jones' convoluted reasoning on pages 61 and 62 reviewing his separate scores in the field assessment and interview is nonsensical and fails to demonstrate racial discrimination where the total combined scores are used and Jones cannot dispute that the successful candidates had the highest total combined scores.

scorers in April 2000. (p. 111:12-24; p.112:1-24; p. 112:1-24; p. 114:23-24; p. 115:23-24; p. 116:1-2; p.144:9-21).Further, although the interview guidelines used were addressed at Plaintiff's deposition and in Defendant's Motion for Summary Judgment, even Jones can point to no question or area of focus that was not directly job related, let alone racially discriminatory. Jones' arguments regarding the EEOC externally validated targeted selection lineperson "C" process are simply legally insufficient.

Jones' assertion that the Company failed to demonstrate its legitimate business and non-discriminatory reasons for the selection of the successful candidates wherein the sworn affidavit testimony identifies that the successful candidates as to the job postings at issue were the top scorers for the lineperson "C" position (*see*, *e.g.*, p. 63) likewise fails especially where Plaintiff fails to demonstrate a prima facie case in the first instance, let alone pretext and racially discriminatory intent.[4]

He also relies on speculation as to a single comment made by Al Perkins ("Perkins") in October of 1998 as to whether Jones still wanted to be a lineperson following a safety meeting where two separate electrical contact incidents involving linepersons were discussed, one involving plaintiff Tolbert, and a second involving a Caucasian employee. He guesses on page 25 of his memorandum that the comment was "racially motivated" and that Perkins made it "knowing that I had been trying repeatedly to apply also to become a Lineperson C on numerous occasions". However, Jones only applied on two occasions, August 1997 and August 1998, prior to September/October 1998 (*see* listing on p. 21 of Plaintiff's memorandum). Moreover, he confirmed that Perkins never made racially offensive statements to him or in his presence or acted unfairly or discriminatorily based on race. Plaintiff never raised with Perkins his

---

[4] (*see, also,* Exhibit 5 to Plaintiff's Appendix and Response to Interrogatory No. 4 including Job Postings 97-223 and 98-196)

speculation that the statement was based on race and responded "Just didn't. No reason why." (p. 72:12-23; p. 73:4-24; p. 74:1-24; p. 75:1-3; p. 76:8-14; p. 77:2-14). Thus, Plaintiff's conclusory belief and speculation as to the single comment by Perkins in no manner demonstrates racial discrimination or pretext in the lineperson "C" targeted selection process.

Plaintiff's reliance on conversations with Bernadette Reinhard ("Reinhard"), as an example, likewise creates no genuine issue of material as to his failure to promote allegations. Jones followed up for the first time after his third or fourth time applying for the lineperson "C" program at which time he called Reinhard to discuss how he could improve.[5] He could not recall the details of the conversation other than she informed him that he did well on his assessment but his interview skills were lacking. He asked her what he could do to improve but testified that he could remember the details of her response other than "she didn't really respond at all, didn't say one way or another." However, he omits that he received written materials from Reinhard wherein she highlighted steps to assist him in the lineperson "C" application process, i.e., April of 1999 and January of 2000. (p. 116: 4-23; p. 117: 1-24; P. 118: 1-3; p. 135: 3-24; p. 136: 1-7: p. 137: 12-20; Exhibit 26; p. 141: 14-17; p. 142: 10-22). He also ignores that he could have gone to others for assistance such as the hiring manager, Ken Toebbe (Toebbe") whom he knew, but never followed up with him and stated "just didn't take advantage of it, that opportunity" (p. 119: 10-15; p. 139: 15-24; p. 140: 1-16).

Finally, Jones merely relies on the allegations of his Complaint with his summary assertion as to the "clearly subjective nature of the "scored" question-and-answer interview process" on page 63 of his memorandum. Courts have long recognized that job interviews are an

[5] Reinhard was employed as a Staffing Consultant. (Bernadette Reinhard Affidavit, ¶ 1-2). Plaintiff's reliance on his subjective belief and inadmissible hearsay as to Reinhard's "attitude" (pp. 24 and 68 of memorandum) is incompetent and immaterial especially where he acknowledged he did not know how she responded to someone off the street or to other people's requests. (p. 133: 1-8, 14-24; p. 134: 1-2, 13-24; p. 135: 1-3).

integral part of the hiring process for employers across the United States. An employer is certainly entitled to make decisions based upon an employee's interview performance particularly when, as here, it has provided the employee with ample assistance to improve his interviewing skills. Jones' poor interview performance simply demonstrates further that summary judgment should be granted against him, not that any genuine issue of material fact exists. Jones failed to obtain a lineperson "C" position for the simple reason that he was not as well qualified as the successful white and African-American job applicants.

Of significance, nothing in Title VII prohibits the use of subjective evaluation criteria in a selection process. S*ee, e.g.*, Sattar v. Motorola, Inc., 138 F.3d 1164, 1170 (7th Cir. 1998); Denney v. City of Albany, 247 F. 3d 1172, 1186 (11th Cir. 2001) ("[I]t is inconceivable that Congress intended anti-discrimination statutes to deprive an employer if the ability to rely on important criteria in its employment decision merely because those criteria are only capable of subjective evaluation"). Canham v. Oberlin College, 666 F.2d 1057, 1061 (6th Cir. 1981), cert. denied, 456 U.S. 977, 102 S. Ct. 2242 (1982) (an employer has "discretion to choose among candidates with different but equally desirable qualifications). In Odom v Frank, 3 F.3d 839, 847, (5th Cir 1993), the court stressed that to establish pretext by showing losing candidate had superior qualifications, the losing candidate's qualifications must "leap from the record and cry out to all who listen that he was vastly – or even clearly -- more qualified for the subject job." There is no such proof in this case and Jones failure to promote claim is not actionable as a matter of law. .

**c. Jones Was Not Constructively Discharged.**

Jones' constructive discharge claim is based entirely upon his own subjective feelings of frustration, a fact he repeats repeatedly throughout his brief (*e.g.*, pp. 20, 21, 26, 27).[6] As set

[6] However, Plaintiff saw a physician on one occasion (post suit-filing). Notwithstanding that he treated with a family physician during the entirety of his employment, Plaintiff never treated or discussed any stress as a result of the

forth above, however, Jones suffered no hostile environment, and the only racially offensive statement he received was literally years before his resignation and of such little significance that he elected not to report it. [7]

A constructive discharge only exists when a reasonable person in the employee's shoes would feel compelled to resign. Wilson v. Firestone Tire & Rubber Co., 932 F.3d 510, 516 (6th Cir. 1991). The cases cited by Plaintiff support the conclusion that there was no constructive discharge.[8] Moore, for example, observes that the plaintiff must show more than a Title VII violation to prove constructive discharge. Id. at 1081. Plaintiff cannot even demonstrate a materially adverse employment action because he did not suffer from a termination, demotion, material loss of benefits, etc. *See, e.g.*, Jones v. Butler Metropolitan Housing Authority, 40 Fed. Appx. 131 (6th Cir. 2002) (summary judgment for employer when employee failed to demonstrate that a failure to promote was not an adverse employment action). Moreover, the denial of a promotion is also not a constructive discharge; Minter v. Cuyahoga Community College, 2000 Ohio App. LEXIS 598 (2001) (attached hereto) Similarly, even a transfer to an alleged dead-end job is not a constructive discharge. Garner v. Walmart Stores, Inc., 807 F.2d

workplace with his physician at any point in time prior to June 2001. He was not treated with any medication, nor diagnosed with a mental or physical disorder. Moreover, he never has had any psychological treatment or counseling at any time, not taken any medication for stress. (p. 188:13-24; p. 189:1-24; p. 190:1-9, 23-24; p. 194:4-17).

[7] In order to show that the plaintiff suffered an adverse employment action he would need to demonstrate that he suffered from a termination, demotion, material loss of benefits or other factors, which he has failed to do. Jones v. Butler Metropolitan Housing Authority, 40 Fed. Appx. 131 (6th Cir. 2002).(summary judgment for employer when employee failed to demonstrate that a failure to promote was not an adverse employment action). In the instant case, Jones' failure to promote into the lineperson C program also cannot be deemed a material adverse job action wherein Plaintiff was gainfully employed with the Company as a Manual Technician.

[8] The cases relied upon by Plaintiff cited in Footnote 10 are readily distinguishable and inapposite. *See, e.g.*, Moore v. Kuka Welding System 171 F.3d 1073 (6th Cir. 1999) (plaintiff was only black employee subject to numerous racial slurs and jokes which were tolerated by the company and heard by a supervisor, observed writing "kill all niggers" on bathroom wall; was paid disparately and supervisor and employees completely isolated, avoided and would not speak to him after he filed an EEOC charge); Davis v. Washington County Open Door Home 2000 U.S. District LEXIS 20007 (S.D. Ohio 2000) (attached hereto) (court considered whether the cumulative effect of the employer's actions would make a reasonable person believe termination was imminent where one employee was suspended, demoted, subjected to harassment and ridicule and attempts to remove him from his job and other employee was harassed, ridiculed, received a written reprimand and both were the only employees not to receive pay increases); Vannay v. OSCEA Local 11, 36 F Supp. 2d 1018 (S.D. Ohio 1999)

1536 (11 Cir. 1987); Schuler v. Polaroid Corp., 848 F.2d 276 (1st Cir. 1988) (transfer to "floater" position not a constructive discharge); Barker v. Scovill, 6 Ohio St. 3d 146, 451 NE 2d 807 (1983)(transfer with a reduction in pay not constitute constructive discharge); Coe v Yellow Freight Systems, 646 F. 2d 444, 454 (10th Cir. 1981) (refusal to promote does not constitute constructive discharge).

Thus, Jones' failure to promote into the lineperson "C" program also cannot be deemed a material adverse job action wherein he was gainfully employed with the Company as a Manual Technician. During his employment as a Manual Technician in the years 1997 through 2001, Jones testified that supervisors and co-employees did not act or make statements in a threatening or intimidating manner; he was not disciplined; he did not file a grievance; he was not denied a merit raise; Caucasians were not paid more than Plaintiff; he was not denied training or opportunities; he was not treated unfairly or discriminatorily by his supervisors; and he did not observe racially offensive items in the workplace. (p. 59:9-24; p. 60:1-24; p. 61:9-11).[9] In this instance, Jones admitted himself that he did not spend much time in preparation for his early bids for the lineperson C position. He further conceded that he received no discriminatory or unfair treatment in the process. (e.g., p. 144:9-11; p. 161:17-19).

Thus, Plaintiff has failed to prove a hostile work environment or failure to promote claim based on race under Title VIII, let alone constructive discharge. Particularly against the backdrop of a company with many anti-discrimination and pro-diversity programs, it was patently unreasonable for Jones to quit a secure, high-paying job in which he was not being subjected to

---

[9] Plaintiff confirmed that he received a pay increase around 2001, 2000. In the year 2001 before he voluntarily resigned on July 18, 2001, Plaintiff was not denied a merit increase; not reassigned to an undesirable assignment; did not receive a change in benefits; and did not receive a poor performance evaluation. (p. 94:7-9, 21-24; p. 95:1-6; p. 96:18-24; p. 97:1-5; p. 170:17-24; p. 171:16-19)

racially hostile conduct or actions. Jones' constructive discharge claim is invalid as a matter of law.

**d. Jones And The Other Plaintiffs' Remaining Arguments Are Inappropriate.**

It is not necessary to reach Jones' remaining arguments in light of the substantive weakness of his claims, but Defendant will address those as well for the sake of completeness.

1. Cinergy Corp. Is Not A Proper Defendant.

Jones and the other Plaintiffs contend that Cinergy Corp. is a proper Defendant in this case, despite any competent evidence that it was ever his, or anyone else's employer. It is uncontested that Cinergy Corp. itself has no employees. Cinergy Corp. has no supervisors, human resources department, or any function other than as a holding company. Jones and the remaining Plaintiffs' entire employment was with The Cincinnati Gas and Electric Company which has its own employees and own supervisors and is not a Defendant in this case.[10]

Jones and the other Plaintiffs' sole argument with respect to Cinergy Corp.'s involvement is the appearance of the name "Cinergy" (not "Cinergy Corp.)" on various pieces of stationery. Jones and the other Plaintiffs cite no authority, and there is no such authority, for the proposition that the appearance of part of a company's name on stationery creates a joint or single employer relationship. Cinergy Corp., which is a mere holding company, lacking any employees, is simply not a proper Defendant in this case.

2. Jones And The Other Plaintiffs May Not Rely Upon Unasserted Claims.

Jones' last argument, which is again unnecessary in light of the substantive weaknesses of his claims, is that portions of their claims are not time-barred because of some silent reliance

---

[10] Moreover, Defendant raised affirmative defenses in this regard and Plaintiffs failed to timely amend the Complaint.

on 42 U.S.C. § 1981 or, perhaps, Ohio Revised Code § 4112.99.[11] Neither statute, however, is mentioned anywhere in Plaintiffs' Complaint. Although Plaintiffs' Complaint references unspecified civil rights acts, nowhere does it identify 42 U.S.C. § 1981 as any alleged claim. Similarly, although Plaintiffs' Complaint make passing reference to unspecified Ohio laws, a claim for discharge in violation of public policy is governed by a four year statute of limitations and, in any event, is unavailable to Jones or the other Plaintiffs because they were covered by a collective bargaining agreement. Painter v. Graley, 70 Ohio St. 3d 377, 639 N.E. 2d 52 (1994).

Jones does not contest that none of the statutes on which the Plaintiffs currently rely were alleged in the Complaint but, instead, asserts that the Company somehow should have divined that they sought to assert such a claim based largely upon an intervening United States Supreme Court decision. If, however, Jones and the other Plaintiffs had desire to assert a § 1981 claim, they should have moved to amend their Complaint, and not simply awaited the filing of summary judgment to proclaim reliance on a statute never cited. For the reasons stated in Defendant's Motion for Summary Judgment, Jones' claims are time-barred and should be dismissed.

## IV. CONCLUSION

Jones' deposition testimony demonstrates that summary judgment should be granted against him as to all claims. He conceded that he suffered no racially hostile conduct. He conceded that he only applied for the Lineperson "C" job, participated in a fair and non-discriminatory process, and was but one of hundreds of unsuccessful applicants, both African-American and Caucasian, who simply did not score as well as the successful applicants. Because Jones was not a victim of racial discrimination and because he himself is responsible for his voluntary decision to resign his employment, summary judgment should be granted against him as to all claims.

[11] This applies to the other Plaintiffs as well.

Respectfully submitted,

/s/ Jill T. O'Shea______________
Jill T. O'Shea (0034692)
Attorney for Defendant,
Cinergy Corp.
139 East Fourth Street – 25 AT II
P.O. Box 960
Cincinnati, Ohio 45201-0960
(513) 287-2062

/s/ Gregory V. Mersol_________
Gregory V. Mersol (0030838)
John B. Lewis (0013156)
BAKER & HOSTETLER LLP
3200 National City Center
1900 East Ninth St.
Cleveland, OH 44114-3485
Telephone: (216) 621-0200
Facsimile: (216) 696-0740

*Attorneys for Defendant*
*Cinergy Corp.*

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing pleading was forwarded via ordinary mail this 28th day of October, 2004 to:

Paul H. Tobias
David D. Kammer
TOBIAS, KRAUS & TORCHIA, LLP
414 Walnut Street
Suite 911
Cincinnati, OH 45202

David W. Sanford, Esq.
Sanford, Wittels & Heisler, LLP
2121 K Street NW
Suite 700
Washington, D.C. 20037

Barry Vaughn Frederick
Herman Nathaniel Johnson, Jr.
Robert L. Wiggins
Ann K. Wiggins
Susan Donahue
Robert F. Childs
Wiggins, Childs, Quinn & Pantazis, P.C.
1400 South Trust Tower
420 North 20th Street
Birmingham, Alabama 35203

Grant E. Morris
Law Offices of Grant E. Morris
2121 K Street NW
Suite 700
Washington, D.C. 20037

/s/ Jill T. O'Shea________
Jill T. O'Shea