# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **BILLY BRANTLEY, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. C-1-01-378** |
| | ) | **Judge Susan J. Dlott** |
| **CINERGY CORP.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### PLAINTIFFS' SUR-REPLY TO
### DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

On February 9, 2006, this Court entered an Order granting in part Plaintiffs' Motion to Strike and granting Plaintiffs' Motion to File Sur-Reply. The plaintiffs file their Sur-Reply herein pursuant to this Order.

In its Order, this Court granted the Plaintiffs' request to strike Defendant's Supplemental Affidavit of Ken Toebbe (Doc. #110-3) and denied Plaintiffs' request to strike Defendant's Declaration of Roger Reis (Doc. #110-2) (hereinafter "Reis Dec."), Affidavit of Connie Terheiden (Doc. #110-4) (hereinafter "Terheiden Aff."), and Supplemental Affidavit of Robert D. Feucht (Doc. #110-5) (hereinafter "Feucht Aff."). Further, this Court granted Plaintiffs' request for leave to file a Sur-Reply on the affidavits and declaration which were not struck, which includes Declaration of Roger Reis, Affidavit of Connie Terheiden, and Supplemental Affidavit of Robert D. Feucht. Thus, Plaintiffs' herein Sur-Reply addresses these three aforementioned documents.

### A.    Declaration of Roger Reis

1.      **The Declaration of Roger Reis supports Brantley's hostile work environment claim.**

The Declaration of Roger Reis supports Billy Brantley's claim that he was subjected to a hostile work environment at Cinergy.  The Declaration documents that a racial slur made by a white employee to an African American co-worker did not bar that employee from being promoted to supervisory and management positions.  Reis' Declaration affirms that on or about February 24, 1982, he used a racial slur directed toward Larry Thomas, an African American co-worker.  Reis Dec. ¶ 4.  The Declaration also affirms that after this incident Reis was promoted to Line Crew Supervisor effective February 1, 1991, to Senior Line Crew Supervisor effective April 1, 1993 and to Supervisor, Field Transmission & Distribution and Construction & Maintenance effective April 1, 1997.  Reis Dec. ¶ 3.  Since March 19, 2000, Reis has held the position of Manager, Network Services.  Reis Dec. ¶ 1.  The Declaration, however, does not disclose the nature of the racial slur admitted to by Reis, nor does it offer any explanation as to why the suspension and the one-day loss of pay Reis received for this incident was reversed after he grieved the discipline.  Reis Dec. ¶¶ 10, 16, 17.  Such omissions only emphasize the piece-meal approach to discovery engaged in by Cinergy which this Court noted with some disapproval in its Order granting Plaintiffs' Motion for Leave to File Sur-Reply as to Reis' Declaration.  Further, Reis' Declaration establishes that Cinergy had notice of this incident, and thus, of a racially hostile work environment in its workplace in February 1982 when Reis was suspended for his racially offensive statement.  However, without a complete record reflecting why Reis' discipline was reversed, which Cinergy has omitted from Reis' declaration, we are left with the reasonable inference that Cinergy condoned Reis' behavior since Reis was ultimately not disciplined for directing a racial slur at a co-worker, nor did the incident

stand in the way of Reis' subsequent string of promotions.

Brantley noted in his Opposition to Defendant's Motion for Summary Judgment that Reiss was one of his supervisors when he was a Lineperson B during the period 1990-1992 and was, in fact, one of Brantley's white supervisors who denied him opportunities to gain experience in bucket truck work. Plaintiffs' Consolidated Memorandum in Opposition to Defendants' Motions for Summary Judgment at 9 (hereinafter "Plaintiffs' Opposition"). Reis' Declaration, filed improperly with the Defendant's response to Plaintiffs' Opposition and filed <u>after</u> the Plaintiffs' Opposition, notably does not refute Brantley's assertion that Reis denied him opportunities to gain experience in bucket truck work. Thus, because Cinergy took it upon itself to supply additional, previously unproduced discovery after Plaintiffs' briefing on Summary Judgment had been complete <u>and</u> because the Declaration lacks any assertion that Reis did <u>not</u> deny Brantley the opportunity to gain experience in bucket truck work, therefore, the fact that Reis denied Brantley the opportunity to gain experience in bucket truck work is now an undisputed fact.

Further, because Defendant had an opportunity to dispute Brantley's assertion that Reis called out to Larry Thomas, "nigger, I'm not getting [such and such] for you," <u>and</u> Defendant did <u>not</u> dispute this statement in Reis' Declaration, the fact of Reis' use of the offensive racial term, "nigger" may be considered an undisputed fact. *See* Defendant, Cinergy Corp.'s, Reply Memorandum In Support of Motion for Summary Judgment as to Plaintiff, Billy Brantley at 4, fn 7 (hereinafter "Def.'s Reply/Brantley"). Because of its history, the word "nigger" is unique in the lexicon of bigotry, and uniquely capable of inflicting injury upon African Americans to whom the epithet is directed as well as upon African Americans who hear about its use towards others of their race, particularly in the work place. As the Sixth Circuit has explained, "Case law makes clear that the

3

use of the word 'nigger,' even taken in isolation, is not a 'mere offensive utterance." *Johnson v. United Parcel Service, Inc.,* 117 Fed. Appx. 444, 454 (6th Cir. 2004) (citing *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1116 (9th Cir. 200); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001)).  The Seventh Circuit has explained, "[P]erhaps no single act can more quickly alter the conditions of employment than the use of an unambiguously racial epithet such as 'nigger' . . . ." *Rodgers v. Western-Southern Life Ins., Co.,* 12 f.3d 668, 675 (7th Cir. 1993). *Accord*, *Hrobowski v. Worthington Steel Co.,* 358 F.3d 473, 477 (7th Cir. 2004) ("[G]iven American history, we recognize that the word 'nigger' can have a highly disturbing impact on the listener.").

Reis' Declaration confirms Brantley's assertion that Reis used a racial slur against Larry Thomas, and it can reasonably be inferred that the racial slur used by Reis, though undocumented in the Declaration, was the word "nigger."  Further, Reis' Declaration confirms Brantley's assertion that Reis denied him opportunities to gain experience in bucket truck work during the time that Reis was Brantley's supervisor.  Having taken the opportunity to provide a declaration from Reis, Defendant failed to rebut Brantley's assertion of Reis' adverse employment action towards him. Further, Reis' declaration fails to give the complete picture of the discipline Reis supposedly received after the incident with Thomas.  At the same time, the declaration attests to the series of supervisory and finally managerial promotions Reis enjoyed after the incident with Thomas.  Clearly, Cinergy had knowledge of racial hostility in its workplace from Reis  in February 1982, yet the declaration also suggests that there were really no consequences for Reis.  Absent any facts to the contrary, it is reasonable to infer that Cinergy took no action to impress upon Reis that his racial animus had no place at Cinergy.  Rather, the incident seems to have been brushed aside and was no hindrance to Reis' advancement.

4

2.     **Under *Morgan*, the Declaration of Roger Reis may properly be considered as evidence of Cinergy's hostile work environment.**

*National Railroad Passenger Corp. v. Morgan*, 122 S. Ct. 2061, 2074 (2002) permits hostile acts which pre-date the statutory limitations period to be considered as part of the hostile work environment for purposes of liability so long as one such act occurs within the filing period. It is undisputed that under Ohio law the statutory limitations period for this lawsuit begins six years previous to the filing of the lawsuit. Thus, the statutory limitations period extends back to June 7, 1995 since the lawsuit was filed on June 7, 2001. *See* Plaintiff's Opposition at 30-32.

Brantley has asserted several incidents of racial hostility that occurred within the statutory time period, including in 1999 when Kenny Willis reported to him that the atmosphere at the company's M&R station was racially intimidating because of the language used and the pictures that were present.[1] Plaintiffs' Opposition at 13. In the fall of 2001, Carol Hendricks reported to him that there were depictions of nooses at the company power plant where she worked. *Id.* Noose incidents, like the one reported to Brantley by Hendricks, has drawn courts' attention:

> Indeed, the noose is among the most repugnant of all racist symbols, because it is itself an instrument of violence. It is impossible to appreciate the impact of the display of a noose without understanding this nation's opprobrious legacy of violence against African-Americans. * * *  The effect of such violence on the psyche of African-Americans cannot be exaggerated. * * * Racially motivated physical threats and assaults are the most egregious form of

---

[1]Defendant's assertion that Brantley brings only hearsay evidence of a racially hostile work environment is obviously a red herring. Reports to Brandley by African American co-workers of their experiences of a racially hostile work environment are not being asserted for the truth of the matter thus reported. Rather, it is sufficient that Brantley's sense that he was working in a hostile work environment resulted from being <u>told</u> of these incidents by African American co-workers, as well as from his own experience being denied training and promotions while white employees were promoted around him. Bradley asserts that he was told of incidents of racial hostility during the statutory time frame and that such reports disturbed him.

5

workplace harassment.

*Williams v. New York City Housing Authority*, 154 F.Supp. 2d 820, 824, 825-826 (S.D. N.Y. 2001);

*Brown v. Peterson*, 2006 WL 349805 at *9 (N.D. Tex. 2006); *Vance v. Southern Bell Telephone and Telegraph Company,* 983 F.2d 1573, 1582 (11th Cir. 1993) (Fay, J. dissenting).  Having shown that at least one incident of racial hostility occurred within the statutory time frame, Brantley is entitled to bring in evidence of other incidents of racial hostility which lie outside the statutory time frame in support of his claim.

Thus, the racially hostile incident attested to by Reis in his declaration, which occurred in 1982, may be considered as part of  "all the circumstances" to which courts are to look in determining whether a hostile work environment exists.  *Morgan*, 122 S. Ct. at 2074.  *Accord McFarland v. Henderson*, 307 F.3d 402, 408 (6th Cir. 2002) ("A hostile-work-environment claim . . . has an effect similar to that of a continuing violation composed of successive discrete acts, in that the existence of the hostile work environment within the . . . time limit causes the actionable violation to encompass conduct that occurred outside of the limit."); *Kang v. . Lim America, Inc.,* 296 F.3d 810,  818 (9th Cir. 2002) (denying summary judgment based, in part, in *Morgan*, when plaintiff  "raised genuine issues of material fact as to whether . . . any act fell within the statutory period."); *Shields v. Fort James Corp.,* 305 F.3d 1280, 1282 (11th Cir. 2002) (applying *Morgan* to consider acts outside the limitations period as part of a single unlawful employment practice "if the smallest portion of that 'practice' occurred within the limitations time period, then the court should consider it as a whole."); *Henderson v. Montgomery County, Kansas, Bd. of County Commissioners,*, 213 F.Supp. 2d 1262, 1273-74 (D. Kan. 2002) ("Assuming that the facts developed at trial are sufficient for a reasonable jury to conclude that some act contributing to plaintiff's harassment claim

took place within [the statutory time frame] and that other acts upon which [the plaintiff's] claim depends that occurred outside the relevant time period are part of the same actionable claim, then the jury must also consider the merits of plaintiff's harassment claims, for despite defendants' argument to the contrary, the court cannot resolve the merits of these claims in favor of defendants on summary judgment.").

Furthermore, contrary to Defendant's assertion, Brantley may bring evidence of hostility directed at any African American employee at Cinergy in order to establish his hostile work environment claim. *See See Jackson v. Quanex Corporation,* 191 F.3d 647, 660 (6th Cir. 1999) ("[T]he district court committed error when it deemed irrelevant the overwhelming evidence [the plaintiff] proffered documenting discriminatory conduct towards other African-American employees at Quanex."); *Yerby v. Univ. of Houston*, 230 F.Supp.2d 753, 764 (S.D. Tex. 2002) ("In considering the totality of the circumstances of the work environment, the Court can look to the experiences of all women in the same environment."); *Hicks v. Gates Rubber Company,* 833 F.2d 1406, 1415-16 (10th Cir. 1987) ("[I]ncidents involving employees other than the plaintiff are relevant in establishing a generally hostile work environment. . . . Evidence of a general work environment therefore--as well as any specific hostility directed toward the plaintiff--is an important factor in evaluating the claim."); *Rodgers v. Western-Southern Life Ins. Co.,* 12 F.3d 668, 674 (7th Cir. 1993) (considering "the nature of the alleged harassment, the background and experience of the plaintiff, her co-workers and supervisors, the totality of the physical environment of the plaintiff's work area, the lexicon of obscenity that pervaded the environment of the workplace both before and after the plaintiff's introduction into its environs . . . ."); *Woods v. Graphic Communications*, 925 F. 2d 1195, 1202 (9th Cir. 1991) ("Even if only a few of [the hostile] acts were directed at [the plaintiff] personally, they

were far from isolated incidents."); *Anthony v. County of Sacramento*, 898 F.Supp. 1435, 1448 (E.D. Cal. 1995) ("[w]hen racial or sexual slurs are combined with racist cartoons, graffiti, practical jokes, and physical intimidation or threats, a hostile environment may be created.").

Considering that it is now uncontested that Reis denied Brantley opportunities in 1990-1992 to train on bucket trucks, and it is also now uncontested that Reis made an offensive racial statement to an African American co-worker, yet was promoted to supervisory and management after the incident, the Reis Declaration gives strong evidence that an objectively hostile work environment of long duration hampered Brantley in his effort to be promoted to supervisory positions. Brantley attests that Reis' conduct toward Thomas was offensive to him. Plaintiffs' Opposition at 13. The Reis Declaration offers support for Brantley's claim that he was discriminated against because of his race. The inference that Reis, who admittedly assaulted an African American co-worker was a brutal racial epithet, would also deny training opportunities to Brantley, also African American, is a reasonable one. Thus, Brantley's assertion that the racial hostility expressed by Reis interfered with the terms and conditions of his employment is also reasonable.

Further, the Reis Declaration provides evidentiary support that an objectively hostile work environment existed at Cinergy in regard to the other plaintiffs in this lawsuit. The Reis Declaration, among other evidence offered by Brantley in his Opposition to Summary Judgment, raises a triable issue of fact on the question of whether there was a racially hostile environment at Cinergy and whether such environment changed the terms and conditions of Brantley's employment. For these and other reasons presented in his Opposition, Brantley is due to survive summary judgment on his

hostile work environment claim.[2]

## B.    Supplemental Affidavit of Robert D. Feucht

The Supplemental Affidavit of Robert D. Feucht (hereinafter "Feucht Aff.") establishes Todd Tolbert's weight from March 23, 2004 through October 19, 2004.  On March 23, 2004, Tolbert weighed 306 pounds, which was 31 pounds over the maximum weight limit of 275 pounds.  Feucht Aff. ¶ 5.  By October 19, 2004, Tolbert had brought his weight down to 260.2 pounds, which was within the maximum weight limit.  Feucht Aff. ¶ 14.  Tolbert's Memorandum in Opposition to Summary Judgment did not put any of these facts in dispute.  Rather, Feucht's Affidavit does not materially alter any of the allegations made by Tolbert in his Memorandum, including the following:

- •    Prior to 2003 when Defendant implemented its company-wide policy that all

---

[2]Cases cited by Defendant in its Reply in Support of Summary Judgment regarding Brantley are easily distinguished.  Defendants cannot rely on *Evans v. Toys R Us Ohio, Inc.*, 211 F.3d 1334 I6th Cir. 2000) (unpublished) for the proposition that the continuing violations doctrine does not apply in the instant case.  *Evans* was decided pre-*Morgan*, which, as argued, affirmed the continuing violations doctrine for hostile work environment claims.  Furthermore, the Defendant cannot rely upon *Evans* for the proposition that Brantley brings only hearsay evidence, when Cinergy itself supplied via Reis' Declaration testimony that its employee made a racially offensive statement to an African American co-worker.  In *Evans*, the court faulted the plaintiff for bringing no affidavits in support of the claims of hostile acts occurring to other employees.  In both *Knox v. Neaton Auto Products Manufacturing, Inc.,* 375 F.3d 451 (6th Cir. 2004) and *Reese v. State of Ohio*, 1989 WL 229382 (S.D. Ohio March 1, 1989), the courts found that the alleged racial incidents did not change the terms and conditions of the plaintiffs' employment.  In *Knox*, the plaintiff admitted that the offensive comments made to her and other did not interfere with her actually doing her job.  *Knox*, 375 F. 3d at 459.  Similarly, in *Reese*, the court found that the offensive comments did not interfere with the plaintiff's job performance.  As argued, such is not the case with Brantley who explicitly asserts that the hostile racial climate interfered with his ability to get the training he needed and to be timely promoted.  *Wilson-Simmons v. Lake County Sheriff's Department,* 982 F.Supp. 496 (N.D. Ohio 1997) differs from the instant case in that the plaintiff asserted only one allegedly racist email with no supporting evidence that it even existed.  Here, the Defendant itself admits the racist incident by Reis.  Brantley certain knew about this incident well before his deposition where he testified that he knew of the incident and that the incident bothered him given Reis' unrefuted hindrance regarding Brantley's ability to train on bucket trucks.

employees be weighted, Defendant allowed supervisors to subjectively decide who should be weighed.  Memorandum in Opposition at 52.

•  Tolbert was singled out to be weighed after 2003.  *Id.*

•  Tolbert was the only person weighed on any type of schedule from 1994-2001.  *Id.*

•  Gary Nasto, a fellow white Lineperson who was overweight, was not treated in this manner.  *Id.*

•  Nasto was merely asked his weight by Defendant when he began working as a Lineperson.  *Id.*

•  Defendant instructed Nasto to keep his weight under control and provided Nasto with an exercise bike so that he could control his weight.  *Id.*

•  These accommodations were never offered to Tolbert.  *Id.*

•  Nasto was not weighed until he returned to work following medical leave almost three years after starting as a Lineperson.  *Id.*

•  Because Nasto was overweight, he was given three months to meet his weight requirement, which he did, but once he met weight he was never weighed again.  *Id.*

•  Nasto was only weighed two to three times by Defendant, whereas Tolbert was weighed on a frequent schedule.

•  Paul Dennis, Gary Nasto, Eric Sibcy, Donald Kramer and Rick Cutsinger all appeared to be over the weight limit set by Defendant; and Kramer, Dennis, Nasto and Sibcy are still over the weight limit but have not received any adverse treatment.  *Id.*

What Fuecht's affidavit shows is that Tolbert successfully brought his weight within the

10

maximum allowable of 275 pounds by October 2004. Feucht's affidavit also supports Tolbert's contention that he was continually weighed since Feucht's affidavit documents five occasions when Tolbert's weight was taken between March 23, 2004 and October 19, 2004. Further the letter to Tolbert from John Wical dated July 13, 2004, states that Tolbert will be weighed bi-weekly, presumably until he reaches the maximum body weight limitation. Significantly, Wical's letter sets no limit on the bi-weekly weigh-ins that were required of Tolbert. Presumably, Tolbert could be subject to bi-weekly weigh-ins for the remainder of his employment with Cinergy no matter what his weight. Tolbert's asserts that his white comparators were not subjected to this same treatment. Nothing in Fuecht's affidavit suggests otherwise.

Fuecht's affidavit establishes that Tolbert complied with the letter to him from John Wical dated July 13, 2004, in which Tolbert was required to weight less than the maximum body weight limitation by April 1, 2005. In short, Fuecht's affidavit is simply not relevant to the question before the court, i.e., was Tolbert treated differently than similarly situated white employees who were favored by being promoted to supervisory positions despite their weight issues whereas Tolbert was denied promotion under the reason that his weight issues precluded promotion. Under the summary judgment standard of viewing the evidence in the light most favorable to Tolbert and without any rebuttal evidence from Defendant to defeat Tolbert's testimony of his disfavored treatment, Defendant's summary judgment motion in regard to Tolbert's race discrimination claim is due to be denied.

Further, Fuecht's affidavit cannot be used to defeat Tolbert's claims under the ADA that he was, in fact, disabled due to his sleep apnea and obesity which interfered with Tolbert's major life activities of running, climbing, performing household chores and work. Neither can Fuecht's

affidavit be used to defeat Tolbert's claims under the ADA that he was perceived as disabled. In fact, Fuecht's affidavit and supporting documents indicate that Cinergy did, in fact, perceive Tolbert as disabled due to his weight. The Wical letter makes it clear that Cinergy considered Tolbert's weight to interfere with his work performance. Rather than offering Tolbert a reasonable accommodation so that he could do his job, the Wical letter simply sets up a monitoring system and a threat of termination if Tolbert does not comply. Tolbert was clearly qualified for his job, with or without reasonable accommodation. Fuecht's affidavit offers no reason for Cinergy's adverse employment actions of denying Tolbert promotions, raises and regularly scheduled overtime other than Cinergy believed he was disabled and failed to offer him reasonable accommodations. Fuecht's affidavit does not refute Tolbert's assertion that Cinergy accommodated a white employee who were overweight by providing an exercise bike or allowing white employees who were overweight to use double-bucket trucks with a maximum allowable weight of 600 pounds but which were denied to Tolbert during his periods of being overweight.

Seen in this light, i.e., the light most favorable to Tolbert, Fuecht's affidavit rather supports Tolbert's claims of race and disability discrimination rather than refuting them.

### C.    Affidavit of Connie Terheiden

The Affidavit of Connie Terheiden (hereinafter "Terheiden Aff.") offers the dates and positions to which Eric Sibcy and Donald Kamer were promoted. Terheiden states that Sibcy was promoted to Distribution Coordinator in the Electric Distribution Operations department on January 1, 2003. Terheiden Aff. ¶ 2. Donald Kamer was promoted to Line Crew supervisor in the Electric T & D C & M department on August 1, 1993. Terheiden Aff. ¶ 3.

Defendant cannot use Terheiden's affidavit to argue that Sibcy and Kamer are not similarly

situated as to Todd Tolbert. Tolbert's contention is that he is similarly situated to white employees who were overweight but were not denied promotions on that basis. Tolbert's argument is that Cinergy's alleged business reason for failing to promote him, i.e., that he was overweight, is merely a pretext for race discrimination. Defendant's statements in its Opposition to Plaintiffs' Motion to Strike, or, in the Alternative, Motion to File Surreply (Doc #115) (hereinafter, "Opposition to Motion to File"), that "Kramer was promoted to Field Supervisor on August 1, 1993, well before the 'time frame of 1996' when Tolbert 'suspected' he was overweight and six years before Tolbert ever applied for a Field supervisor position," Opposition to Motion to File at 5,  is wholly beside the point. Significantly, Defendant does not cite to any document in which  this so-called "time frame of 1996" in which Tolbert "suspected" Kramer was overweight was established.  In fact, Tolbert has never given a time frame of 1996 or any other time in which he "suspected" Kramer was over weight. Rather, Tolbert asserts, and his assertion in unrebutted by Terheiden's affidavit, that Kramer was overweight at the time he was promoted to Line Crew supervisor in 1993. It is not availing that Kramer received the position in 1993 for a position that Tolbert also sought at a later date.  The similarly between the two men lies in the fact that Kramer was overweight, yet he was promoted to the Line Crew supervisor position whereas Tolbert's weight issue became the ostensible reason that he was not promoted to the same position.

Further, Terheiden's affidavit does not defeat Tolbert's assertion that he was similarly situated to Eric Sibcy, who also had a weight issue.  Both Sibcy and Tolbert applied for first-line supervisory positions–Tolbert to the position of Temporary Training Lead Crew supervisor and Sibcy to the position of Distribution Coordinator.  Terheiden's affidavit cannot be used to defeat Tolbert's argument of pretext since it is silent as to why Sibcy was promoted to a supervisory

position when he had a weight issue. Simply knowing the dates for Sibcy and Kramer's promotions cannot be construed to be sufficient to defeat Tolbert's prima facie case of discrimination. Rather, Tolbert's similarly situated status as to Sibcy and Kramer in that all three were employees with weight issues and all three sought promotions to supervisory positions reveals the pretextual nature of Defendant's asserted legitimate reason for denying Tolbert promotion. There is simply no way that Terheiden's affidavit, which merely offers the dates of Sibcy and Kramer's promotions, cannot be construed as defeating Tolbert's argument that the weight issue was merely a pretext for race discrimination. Tolbert's assertion remains: Sibcy and Kamer were promoted despite their weight issues; Tolbert's weight was used against him to deny him a promotion.

## <u>CONCLUSION</u>

The Declaration of Roger Reis may be considered as containing evidence of Cinergy's racially hostile work environment. Reis' Declaration does nothing to defeat Billy Brantley's hostile work environment claim. Based on the Declaration of Roger Reis, along with other evidence brought forward by Brantley, Brantley's hostile work environment claim deserves to survive summary judgment.

The Supplemental Affidavit of Robert D. Feucht provides no evidence in rebuttal of Todd Tolbert's claim of race discrimination in hiring or his claim of discrimination under the ADA. Rather, Feucht's affidavit supports Tolbert's contention that his weight was continually monitored and that he eventually was able to comply with Cinergy's weight limitation. Further, Feucht's affidavit supports Tolbert's claim of discrimination under the ADA since it documents that Tolbert was obese and that his obesity was perceived as a disability by Cinergy. Feucht's affidavit offers no evidence that Cinergy attempted to accommodate Tolbert. Rather, Feucht's affidavit demonstrates

14

that Cinergy excessively monitored and punished Tolbert for his over weight condition.

The Affidavit of Connie Terheiden offers the dates of the promotions for two white comparators to Tolbert.  The dates of Tolbert's white comparators' promotions does not rebut Tolbert's assertion that he was treated differently than they were because of his weight, i.e., that his comparators were promoted to supervisory positions despite their weight issues while he was denied promotion to a supervisory position based on his weight.

Because neither Feucht's nor Terheiden's affidavit successfully rebuts Tolbert's claims of discrimination due to race and disability, but rather may be seen to support his claims, Cinergy's motion for summary judgment as to Tolbert's race and disability discrimination claims is due to be denied.

Respectfully submitted,

s/**_Susan Donahue_**
Robert L. Wiggins, Jr.
Robert F. Childs, Jr.
Ann K. Wiggins
Barry V. Frederick
Susan Donahue
WIGGINS, CHILDS, QUINN & PANTAZIS, P.C.
The Kress Building
301 19th Street North
Birmingham, AL 35203
Tel. (205) 314-0500
Fax ( 205) 254-1500
bvf@wcqp.com
sgd@wcqp.com

Paul H. Tobias
David D. Kammer

15

TOBIAS, KRAUS & TORCHIA
911 Mercantile Library Building
414 Walnut Street
Cincinnati, OH 45202
Tel. (513) 241-8137
Fax (513) 241-7863
tkt@tktlaw.com

David W. Sanford
SANFORD, WITTELS & HEISLER, LLP
2120 K Street NW, Suite 700
Washington, DC 20037
Tel. (202) 942-9124
Fax (202) 628-8189
dsanford@davidsanford.com

Grant E. Morris
LAW OFFICES OF GRANT MORRIS
2121 K Street, N.W.
Suite 700
Washington, D.C. 20037
Tel. (202) 331-4707
Fax (202) 628-8189
Grantmorris@grantmorrislaw.com

*Attorneys for the Plaintiffs*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 23, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification to:


Ms. Jill T. O'Shea
Atrium II
139 East Fourth Street
P.O. Box 960
Cincinnati, OH 45201-0960
Tel (513) 287-2062
Fax (513) 287-3810

Mr. Gregory V. Mersol
BAKER & HOSTETLER, LLP
3200 National City Center
1900 East Ninth St.
Cleveland, OH 44114-3485
Tel. (216) 621-0200
Fax (216) 696-0740


s/*__Susan Donahue__*
OF COUNSEL